UNITED STATES, Appellee,

v.

Sherrie L. MATTHEWS, Staff Sergeant,
U.S. Air Force, Appellant.

No. 99–0487.
Crim.App. No. S29326.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 16, 1999.

Decided Aug. 31, 2000.

GIERKE, J., delivered the opinion of the Court, in which EFFRON, J., and EVERETT, S.J., joined. EVERETT, S.J., filed a concurring opinion. SULLIVAN, J., filed an opinion concurring in the result. CRAWFORD, C.J., filed a dissenting opinion.

For Appellant: *Major Robin S. Wink,* USAFR (argued); *Lieutenant Colonel Jeanne M. Reuth, Lieutenant Colonel James R. Wise,* and *Major Thomas R. Uiselt* (on brief); *Colonel Theodore J. Fink.*

For Appellee: *Major Jennifer R. Rider* (argued); *Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers,* and *Captain James C. Fraser* (on brief); *Captain Tony R. Roberts.*

Judge GIERKE delivered the opinion of the Court.

A special court-martial composed of officer members convicted appellant, contrary to her pleas, of wrongfully using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The adjudged and approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 50 MJ 584, 591 (1999). Our Court granted review to determine whether the military judge abused his discretion by permitting the prosecution to introduce evidence that appellant used marijuana a second time after the

offense for which she was tried. For the reasons set out below, we reverse.[1]

### Factual Background

Appellant is a married staff sergeant with over 14 years of active duty. She was assigned as the noncommissioned officer-in-charge of Information Management at the Office of Special Investigations (OSI) detachment, Tyndall Air Force Base, Florida. On Wednesday, April 24, 1996, OSI Special Agent (SA) Lockwood notified appellant that she had been randomly selected for urinalysis testing. She was told to report for testing the next morning. Shortly after she was notified, appellant told SA Lockwood that she felt ill, and she went home early. On the next day, she called SA Lockwood and told him that she was still ill. She returned to duty on Friday, April 26.

On Monday, April 29, 1996, she reported to the urinalysis-testing site and provided a urine sample. The sample tested positive for marijuana with a concentration level of 57 nanograms per milliliter. Appellant was ordered to provide another sample, and she provided the second sample on May 21. This command-directed sample also tested positive with a concentration level of 45 nanograms per milliliter.

1. This Court granted review of the following issues:

I

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS IMPROPERLY APPLIED THE ABUSE OF DISCRETION STANDARD OF REVIEW BY CONSIDERING APPELLANT'S GOOD CHARACTER AFFIDAVITS—EVIDENCE THE MILITARY JUDGE DID NOT CONSIDER—IN DETERMINING WHETHER THE DEFENSE OPENED THE DOOR TO ADMISSION OF APPELLANT'S COMMAND–DIRECTED URINALYSIS.

II

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED BY NOT STRICTLY APPLYING MIL.R.EVID. 311(b) WHILE SIDESTEPPING THE QUESTION OF WHETHER THE RESULTS OF APPELLANT'S COMMAND–DIRECTED URINALYSIS WERE ILLEGALLY SEIZED EVIDENCE UNDER THE FOURTH AMENDMENT.

III

WHETHER ADMISSION OF THE RESULTS OF APPELLANT'S COMMAND–DIRECTED URINALYSIS IN HER COURT–MARTIAL VI-

At trial, during the defense case-in-chief, appellant introduced several affidavits attesting to her good military character, and she testified about her military career. Regarding the first positive urinalysis, she testified as follows:

Q. And you've seen the documents from the laboratory and you are aware, I know, the Government has charged you with wrongful use of marijuana between on or about 1 April 1996 and 29 April 1996, you are aware of that?

A. Yes, sir.

Q. Did you do that?

A. No, sir.

Q. Well, let me ask you a question then; do you have any idea how the results came back positive on you?

A. No, sir, I do not.

Q. Is there anything at all?

A. No, sir.

Q. What—has this pending court-martial affected you in any way?

A. Yes sir. They took away my security clearance and my job.

Q. How do you feel about the fact that this test has identified you as having

OLATED HER FOURTH AMENDMENT RIGHTS TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE.

IV

WHETHER THE MILITARY JUDGE'S RULING THAT APPELLANT OPENED THE DOOR TO ADMISSION OF APPELLANT'S COMMAND–DIRECTED URINALYSIS UNDER MIL.R.EVID. 311(b) WAS AN ABUSE OF DISCRETION.

V

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED WHEN THEY CONCLUDED APPELLANT RAISED THE "UNKNOWING INGESTION" DEFENSE, CONTRARY TO THIS HONORABLE COURT'S OPINION IN *UNITED STATES V. GRAHAM*, 50 MJ 56 (1999).

VI

WHETHER THE ADMISSION OF APPELLANT'S COMMAND–DIRECTED URINALYSIS UNDER MIL.R.EVID. 404 WAS AN ABUSE OF DISCRETION.

Since we reverse on the basis of Issue IV, we do not address the other issues.

used marijuana during the time frame; how does that make you feel?

A. Mad.

Q. Has it affected the way that you relate with people in your unit?

A. Yes, sir.

Q. Has it affected the way you relate with your family?

A. Yes, more stressed.

Following this testimony, trial counsel asked for an evidentiary hearing without the members present. *See* Art. 39(a), UCMJ, 10 USC § 839(a). At this hearing, he argued that appellant had opened the door for the results of the later command-directed urinalysis to be admitted as impeachment evidence.

The military judge agreed. He ruled that the evidence obtained on May 21 through the command-directed urinalysis was admissible to impeach appellant's testimony that she did not use marijuana at any time between April 1 and April 29. He also ruled that the evidence was relevant and admissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States (1995 ed.),[2] to show that appellant's use of marijuana was knowing and conscious. Finally, citing Mil.R.Evid. 403, he ruled that its probative value was "not substantially outweighed by the danger of unfair prejudice, confusion to court members, or anything else." However, he would not permit any reference to the command-directed urinalysis in rebuttal to or cross-examination of any defense character witnesses. He specifically ruled that Mil. R.Evid. 608, allowing cross-examination about specific instances of conduct when it is probative of truthfulness, was "not a player" in this case.

When the trial on the merits resumed, trial counsel asked appellant if "good military members ... use drugs," and she responded, "No, sir." He asked appellant if she provided a urine sample on May 21, 1996, and if that sample tested positive. She responded affirmatively to both questions. Trial counsel asked her if she was "attempting to im-

ply" that she had "innocently ingested marijuana twice within a five-day period," and she responded, "It's possible." On redirect, she testified that she did not know why both urinalysis tests were positive. She was asked, "Did you use marijuana?" She responded, "No, sir."

After appellant completed her testimony, the military judge allowed trial counsel to present testimony from Dr. Papa, an expert witness, that the positive reading from the command-directed urinalysis could not have been from the same use of marijuana that resulted in a positive reading from the random urinalysis. During an evidentiary hearing without the members present, Dr. Papa testified that the second positive urinalysis was consistent with chronic use of marijuana, *i.e.*, "more than two or three times a week."

For reasons not apparent from the record, Dr. Papa's testimony concerning the possibility of appellant's chronic use was not presented to the members. In response to questions from two court members, Dr. Papa testified that it was not scientifically possible for both urine samples to have tested positive based on a one-time ingestion. Trial counsel did not pursue the theory of chronic use, but proceeded instead on the theory that appellant used marijuana on two separate occasions.

Before Dr. Papa testified, the military judge instructed the members that the evidence of the second positive urinalysis was admissible for "the limited purpose ... to either prove knowledge ... knowing and conscious ingestion and ... an opportunity on her part to use marijuana ... and, I guess I should say, as it may affect your assessment of the credibility of her testimony before you."

Before the members began deliberations, the military judge instructed as follows:

As I have advised you earlier, some evidence has been admitted for limited purposes in this case, and more specifically, Prosecution Exhibit 14 and testimony re-

---

**2.** All Manual provisions are cited to the version applicable at trial. The 1998 version is un-

changed, unless otherwise indicated.

lated thereto regarding a urine specimen provided by the accused on or about 21 May 1996, and subsequent urinalysis testing thereof; and that is the tendency of such evidence, if any, to prove the requisite knowledge on the accused's part or opportunity to commit the alleged offense before this court, or as such evidence may have an impact, if any, on your assessment of the credibility of the accused's testimony before the court. You may not consider this evidence for any other purpose. And you may not conclude from this evidence that the accused is a bad person, a person of bad moral character, or has criminal tendencies and that she, therefore, committed the offense charged. This evidence was not admitted for that purpose and you may not consider it for that purpose. You may, as I say, use it only for the limited purposes of its tendency, if any, to prove knowledge or opportunity on the accused's part to commit the offense charged, or its impact, if any, on the credibility and weight you decide to give to her testimony.

Defense counsel did not object to the limiting instruction or request additional instructions.

### Discussion

Mil.R.Evid. 404(a) prohibits admission of so-called "propensity evidence." It provides: "Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." This Court has held that the mere fact that a person had used drugs at times previous to the charged offenses does "not make it more or less probable that" the person knowingly used drugs on the date charged. *United States v. Cousins*, 35 MJ 70, 74 (1992).

However, Mil.R.Evid. 404(b) permits evidence of "other crimes, wrongs, or acts" to prove facts other than a person's character, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This rule was the legal basis for the military judge's ruling that the command-directed urinalysis in May was admissible to show that appellant's use of marijuana in April was knowing and conscious.

Evidence offered under Mil.R.Evid. 404(b) must satisfy three tests to be admissible. First, the evidence must "reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts." Second, the evidence must make a fact of consequence more or less probable. Third, the evidence must satisfy the balancing required by Mil.R.Evid. 403, *i.e.*, its probative value must not be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Reynolds*, 29 MJ 105, 109 (CMA 1989). The military judge specifically cited Mil.R.Evid. 404(b) and 403 when he ruled that the evidence was admissible.

Mil.R.Evid. 608(b) provides that the credibility of a witness may not be attacked by extrinsic evidence of specific instances of conduct, but a witness may be cross-examined about specific conduct, if it is probative of truthfulness or untruthfulness. The military judge specifically ruled that Mil.R.Evid. 608 was "not a player" in this case. Nevertheless, he permitted trial counsel to cross-examine appellant about the second positive urinalysis.

"The scope of rebuttal is defined by evidence introduced by the other party." *United States v. Banks*, 36 MJ 150, 166 (CMA 1992) (citing *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Baldwin*, 17 USCMA 72, 37 CMR 336 (1967); *United States v. Sellers*, 12 USCMA 262, 30 CMR 262 (1961)). A broad assertion by an accused "on direct examination that he" or she "has never engaged in a certain type of misconduct" may open the door to impeachment "by extrinsic evidence of the misconduct." *United States v. Trimper*, 28 MJ 460, 467 (CMA), *cert. denied*, 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989); *see Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The military judge ruled that appellant's testimony that she did not use marijuana at any time between April 1 and

April 29 opened the door to impeachment by extrinsic evidence that she had marijuana metabolite in her urine on May 21. He specifically cited *Trimper* in support of his ruling.

■ The Court of Criminal Appeals held that appellant's testimony raised the issue of innocent ingestion. But it held that the second, command-directed urinalysis initiated on May 21 did not directly contradict appellant's testimony that she did not knowingly use marijuana between April 1 and April 29. 50 MJ at 588. The court below held, however, that the second positive urinalysis was relevant to appellant's credibility and to rebut her evidence of good military character. *Id.* at 590.

■ We disagree. Extrinsic evidence of specific acts is not admissible to rebut evidence of good military character. *See United States v. Pruitt,* 46 MJ 148, 151 (1997). Although cross-examination of character witnesses about specific acts is permissible under Mil.R.Evid. 405(a), "cross-examination should be limited to acts that would have occurred *prior* to the crime charged, because the court wants to test character at that time." Stephen A. Saltzburg, Lee D. Schinasi, and David A. Schlueter, *Military Rules of Evidence Manual* 572 (4th ed.1997) (emphasis in original). We note that the military judge did not instruct the members on this theory of admissibility.

■ A military judge's ruling on admission of evidence will be overturned only if there is an abuse of discretion. A military judge abuses his discretion if his ruling "is influenced by an erroneous view of the law." *United States v. Sullivan,* 42 MJ 360, 363 (1995).

■ We hold that the military judge abused his discretion when he admitted the evidence of the second command-directed urinalysis. This Court has rejected the notion that evidence of an unlawful substance in an accused's urine at a time before the charged offense may be used to prove knowing use on the date charged. *See Graham,* 50 MJ at 60; *see also Cousins,* 35 MJ at 74. We also reject the notion that evidence of an unlawful substance in an accused's urine *after* the date of the charged offense and not connected to the charged offense may be used to prove knowing use on the date charged. The military judge's error in admitting the evidence was compounded by his instruction telling the members that they could consider the evidence as proof of knowledge, knowing and conscious ingestion, and opportunity.

■ Our dissenting colleague suggests that the evidence of the second positive urinalysis was admissible to prove guilty knowledge under the "doctrine of chances." This doctrine posits that "it is unlikely that the defendant would be repeatedly innocently involved in the similar suspicious situations." 1 E. Imwinkelried, *Uncharged Misconduct Evidence* § 5:28 at 78 (1999).

■ While we have no quarrel with this theory of admissibility, there is no factual predicate for applying it in this case. Furthermore, under the doctrine of chances, the proponent of the evidence would be required to show that the subsequent ingestion of marijuana was under circumstances sufficiently similar to the first ingestion as to justify an inference that the first ingestion of marijuana was knowing. *Id.* at 79–80. *See United States v. Aguilar–Aranceta,* 58 F.3d 796, 799 (1st Cir.1995) (similarity between uncharged act and current charges is "touchstone" in test for relevance); *United States v. Mayans,* 17 F.3d 1174, 1183 (9th Cir.1994) (prosecution must show more than "the crudest sort" of similarities between charged and uncharged misconduct); *United States v. Gordon,* 987 F.2d 902, 908–09 (2d Cir.1993) (abuse of discretion to admit evidence of other acts if the other act or acts are not "sufficiently similar to the conduct at issue" to provide reasonable basis to infer knowledge).

In appellant's case, the prosecution proceeded on a "paper case," producing laboratory reports but absolutely no evidence of the circumstances surrounding either the first or second alleged ingestion. The record is devoid of evidence that the circumstances of the second alleged ingestion were similar to the

first. Without such evidence, there is no factual basis for applying the "doctrine of chances." Accordingly, we conclude that a theory of relevance based on the "doctrine of chances" is not applicable to this case.

■ Court members are presumed to follow the military judge's instructions. *United States v. Holt*, 33 MJ 400, 408 (CMA 1991). Thus, we must presume that the court members considered the evidence of the second urinalysis for an improper purpose.

■ The military judge also instructed the members that the second positive urinalysis could be considered in their assessment of appellant's credibility. He gave them no further guidance. Since the military judge rejected Mil.R.Evid. 608 as a basis for admitting the evidence, ruled that the prosecution would not be allowed to attack appellant's character evidence by cross-examination about specific acts, and specifically cited *Trimper* in support of his ruling that the evidence was admissible, it is clear that he intended that the members consider the second urinalysis as evidence contradicting appellant's carefully limited denial that she used marijuana between April 1 and April 29, the period charged. However, the military judge did not translate his rationale into instructions setting out the permissible legal framework for evaluating appellant's credibility. *See United States v. Harper*, 22 MJ 157, 164 (CMA 1986) ("Where members are the finders of fact, it is incumbent on the military judge to clearly instruct them concerning [the applicable] principles of law.") We agree with the court below that the evidence obtained through the command-directed urinalysis does not contradict appellant's direct testimony. Thus, to the extent that the military judge's instructions permitted the members to consider the second urinalysis as impeachment by contradiction, they were inadequate and incorrect.

Given the highly inflammatory nature of the evidence of appellant's second positive urinalysis, the danger of a conviction improperly based on propensity evidence required carefully crafted limiting instructions. Similarly, once appellant put her credibility on the line, she was entitled to have it evaluated

in a correct legal framework. In this case, the military judge admitted the evidence on an incorrect legal basis and submitted it to the members with erroneous and ambiguous instructions. Accordingly, we must reverse.

*Decision*

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

EVERETT, Senior Judge (concurring):

After appellant had been tested on April 29, 1996—and because of the results of that test, she was further tested on May 21, 1996. In view of the nanogram levels of the respective tests, an expert testified that they did not reflect a single use of drugs—unless the person tested was a chronic user.

Thus, a basis might have existed for charging appellant with two separate instances of drug use. The Government did not choose to do this. Perhaps this decision was made because an issue might exist as to admissibility of the results of the second test—which, unlike the first test, was not part of an "inspection" but instead was command-ordered. I have some question as to whether the Fourth Amendment would bar receipt in evidence of the results of a test ordered by a commander under those circumstances. However, I defer readily to what seems to have been the military judge's position that those results were admissible only if the door were opened by the defense.

If the Fourth Amendment otherwise would have barred receipt of the results in evidence, I doubt that the exception provided in Mil.R.Evid. 311(b)(1) would change the outcome. My reading of the record suggests that the evidence here was not "used to impeach by contradiction the in-court testimony of the accused." Although I recognize that the loophole first created by *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), has been expanded by later cases such as *United States v. Havens*, 446

U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980),* the testimony given by appellant still did not go far enough to eliminate any Fourth Amendment bar to admitting evidence of the results of the second test.

Even if the Fourth Amendment would not exclude evidence of the second drug test, its receipt at trial was barred by Mil.R.Evid. 404(b) and 403. As Judge Gierke makes clear, that test—even if it were deemed to establish that appellant had committed a second offense—is admissible under 404(b) only "for other purposes" than to prove bad character. Moreover, the "danger of unfair prejudice, confusion of the issues, or misleading the members" is very great in relation to the "probative value" of the evidence about the results of the second drug test.

Therefore, I concur with Judge Gierke.

SULLIVAN, Judge (concurring in the result):

My dissent in *United States v. Graham*, 50 MJ 56 (1999), was grounded on the principle of fair rebuttal in a case where the accused had made use of a similar "innocent ingestion" defense in a prior drug trial. I held that under the specific circumstances in *Graham* (where the accused at trial was possibly misleading the jury with his explanation that he was "flabbergasted" to see a positive urinalysis) the jury was entitled to know about the prior positive urinalysis under the "lightning is striking twice" theory. *Id.* at 60–63 (Sullivan, J., dissenting).

In the instant case we have different circumstances. Immediately on being told that she tested positive for drugs, appellant was required to submit to a command-directed urinalysis (which later proved positive for drugs). *See United States v. Campbell*, 41 MJ 177 (CMA 1994). Although it may have been reasonable for a commander to order that second urinalysis, *see* Mil.R.Evid. 313(b), it is not fair to introduce it at trial and put an unjustified double burden on the accused. *See* Mil.R.Evid. 403 (probative value "substantially outweighed by the danger of unfair

prejudice, [or] confusion of the issues,...."). In effect, the accused is forced to defend against two separate incidents of drug use while being charged with only one. Absent the special circumstances described in *Graham*, where I decided that the rebuttal evidence of the "prior positive result" was necessary to prevent the jury from being misled, I join the result of the majority here. I do so because to do otherwise would increase the danger that command-directed-urinalysis results that are positive, like in this case and in future similar cases, may become admissible simply because a servicemember's defense is innocent ingestion. Accordingly, I join the majority's result in authorizing a rehearing under the circumstances of this case.

CRAWFORD, Chief Judge (dissenting):

I dissent because the majority overlooks the common-law theory of contradiction and misreads the Supreme Court cases concerning impeachment by extrinsic evidence.

FACTS

Appellant, an Office of Special Investigations agent, when notified on Wednesday, April 24, 1996, that she had been randomly selected for urinalysis testing, became pale and ill and went home early. She called in sick on Thursday and did not provide the urine sample until the following Monday morning. That sample tested positive for marijuana. Appellant was then ordered to provide a command-directed urine sample on May 21, 1996. That sample also tested positive for marijuana.

At trial, the defense began its case-in-chief by introducing seven affidavits as to the good character of appellant. The first live defense witness was another agent who indicated he had attended the same luncheon as appellant and also became sick. Appellant was the next defense witness and testified that she had no idea as to why she tested positive and that she was mad that the test identified her

* *Cf. United States v. Trimper*, 28 MJ 460 (CMA), cert. denied, 493 U.S. 965, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989); *see also James v. Illinois*, 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990).

as using marijuana. At the conclusion of the direct examination, the prosecutor asked for an Article 39(a) session at which he argued that appellant's testimony opened the door to admission of the command-directed urinalysis under Mil.R.Evid. 404(b) as rebuttal to show appellant had knowledge of and opportunity to use marijuana.

To determine logical relevance, a government expert, Dr. Papa, was recalled. He testified that because of the length of time between the first and second sample, the second sample could not be attributed to the first ingestion. Based on the prosecution. proffer, the judge then allowed the prosecution to question appellant about the second urinalysis.

## DISCUSSION

This case involves use of a subsequent act to contradict appellant's trial assertion that she had no idea why she tested positive and that she was mad that the test identified her as using marijuana. The prevailing "view is that subsequent acts are admissible," if "logically relevant." *See* 1 E. Imwinkelried, Uncharged Misconduct Evidence § 2:12 at 72 (1999).

That same treatise recognizes, however, that "subsequent acts are often (but not invariably) irrelevant to prove the defendant's prior knowledge." *Id.* at 73–74. Furthermore, "depending on the theory, the prosecutor may be restricted to prior uncharged misconduct or similar acts or may be required to prove more than one uncharged act." § 5:24 at 66 (footnote omitted).

The treatise then discusses four categories of cases in which prosecutors are frequently allowed to introduce uncharged misconduct to prove the defendant's guilty knowledge. §§ 5:25 – 5:28. The fourth category is styled **Uncharged Acts Which Tend To Prove Guilty Knowledge by Virtue of Doctrine of Chances.** § 5:28 at 78. According to this doctrine, "it is unlikely that the defendant would be repeatedly innocently involved in the similar suspicious situations." *Id.* In this category, it does not matter "[w]hether

the incident occurs before or after the uncharged incident, [because] under the doctrine of chances the uncharged incident is relevant to lower the probability of innocent state of mind." *Id.* at 79.

The treatise notes that "courts are split over the question whether the proponent may invoke the doctrine of chances if the proponent has evidence of only one similar act." § 5:07 at 22. However, "[u]nder Federal Rule of Evidence 401, even a single similar instance of conduct can be material to increase the likelihood of mens rea." *Id.* (footnote omitted). For example:

> If the judge believes that it is implausible that a person could perform a physical act or series of acts more than once without forming a certain mens rea, a single uncharged act is relevant under the doctrine of chances to show intent. Relying on his or her common sense and life experience, the judge may conclude that innocent involvement in this type of incident is a "once in a lifetime" experience.

*Id.* at 23.

Appellant's claim of lack of knowledge as to why her April 29th urinalysis results tested positive for marijuana is precisely such a " 'once in a lifetime' experience." It is implausible that she could be tested again the following month, on May 21, and once again have her urinalysis results test positive for marijuana and have an innocent state of mind. The act at issue is similar in all respects: the same drug found in the urine of a person and closely related in time.[1] Moreover, marijuana use is a complex act requiring several premeditated steps. Therefore, appellant's subsequent positive urinalysis test is admissible under the theory of logical relevance.

The majority asserts that the evidence is insufficiently similar to the charged act. I disagree. The cases cited by the majority are entirely dissimilar. For example, in *United States v. Aguilar–Aranceta*, 58 F.3d 796 (1st Cir.1995), the court found particularly troubling "the four-year period between

---

1. The treatise notes: "So long as the time lapse is short and there is no evidence of an intervening change in circumstances, there certainly is logical relevance." § 2:12 at 73.

[the accused's] prior conviction and the facts leading to the present charges." The court nonetheless found "that the district court did not abuse its discretion in finding that Aguilar–Aranceta's prior conviction was specially relevant to the issue of knowledge." The court also found that the evidence should have been excluded under "Rule 403 balancing" (*id.* at 800) due to "the remoteness in time of her prior conviction" and the danger of unfair prejudice. "Aguilar–Aranceta spoke little or no English"; the postal "window clerk was aware that Aguilar–Aranceta would be arrested if she took the packages" containing cocaine and the clerk "might have been especially zealous in encouraging her to take the packages." Id. at 801.

In *United States v. Gordon*, 987 F.2d 902 (2d Cir.1993), the court concluded that defendant "Gordon's possession 16 months earlier of a modest amount of crack and a triple-beam scale had so little value to prove his knowledge that Ghullkie, whom he had met only recently, was importing a large quantity of cocaine and marijuana that it was inadmissible." *Id.* at 909.

In *United States v. Mayans*, the defendant was charged with conspiracy to distribute and possession with intent to distribute cocaine, and possession of cocaine. "[F]ive cocaine buyers and the sellers' 'mule,' Andres Ortiz, were all arrested in the act of consummating a drug deal; three others ... were arrested at or in the course of leaving an apartment ... which Ortiz had visited just before the deal." Appellant "Pablo Mayans was arrested as he drove up and down the street in front of" the apartment, which was owned by his family. "The government ... introduced evidence ... of prior drug deals between Mayans and three of the buyers" to show knowledge and intent. "The trial court ... was satisfied with information of the crudest sort—the mere fact that appellant had allegedly made prior drug deals with the co-defendants." 17 F.3d 1174, 1177, 1182–83 (9th Cir.1994). The Court of Appeals found that this evidence may not have "put him on notice of the facts about which he disclaimed knowledge in this case." *Id.* at 1183.

The Court of Appeals in *Mayans* cited a case with facts similar to this one concerning proof of "a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act." *Id.* at 1181–82. In *United States v. Sinn*, 622 F.2d 415 (9th Cir.1980), *cert. denied*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980), the accused "was apprehended at the Los Angeles airport following a flight from Ecuador and was found carrying a camera case" concealing cocaine. As noted by the *Sinn* court, which included then-Judge Kennedy, "It was shown over objection that about five years previously appellant had been in possession of cocaine during an illegal buy-and-sell transaction." The court held: "Where, as here, the sole question is one of intent, we think it within the discretion of the trial court to decide that a previous dealing is relevant on the issue of the knowledge of the participant in a second event, particularly where, as here, there was substantial evidence from which knowledge might be inferred apart from the prior act.... Here, in both the prior and the subsequent offenses, the identical drug was involved and was found on the person of the appellant." 622 F.2d at 416.

The majority opinion in the present appeal denounces the "paper case" of the laboratory results as insufficient to show the circumstances surrounding either the first or second alleged ingestion. None of the cases cited in the majority opinion require a more detailed factual predicate for admission of prior or subsequent acts. All that needs to be demonstrated is logical relevance: *i.e.*, the identical drug was found in the urine of the person on separate occasions, and in this case, only one month apart. It doesn't matter whether appellant smoked a joint on one occasion and a bong the next; either way, the evidence shows that she knew why her urine tested positive for marijuana.

The Supreme Court in *Harris v. New York*, 401 U.S. 222, 224–25, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), relying on *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), approved use of illegally seized evidence to impeach the accused's testimony. But *Walder* involved impeachment on a col-

lateral point. The *Walder* Court said the defendant "must be free to deny" elements in the case without opening himself or herself to impeachment by illegally seized evidence. *Harris* implicitly rejected that limitation and thus rejected the requirement for a sweeping denial before illegally seized evidence may be admitted.

The Supreme Court in *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980), noted specifically the Court of Appeals' holding below "that illegally seized evidence may be used for impeachment only if the evidence contradicts a particular statement made by a defendant in the course of his direct examination." *Id.* at 623, 100 S.Ct. 1912. The holding was based on a very narrow reading of *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). 446 U.S. at 623–25, 100 S.Ct. 1912.

Agnello was charged with conspiracy to sell a package of cocaine. He testified on direct examination that he had possessed the packages but did not know what was in them. On cross-examination he denied ever having seen the narcotics that were in the can of cocaine that was suppressed. The Supreme Court held that the suppressed evidence could not be used to impeach Agnello since on direct examination he did not testify concerning the can of cocaine. 269 U.S. at 35, 46 S.Ct. 4.

The Supreme Court in *Havens* noted that *Agnello* and the other cases were *erroneously* read to mean that illegally seized evidence could be used to impeach a statement brought out by defendant on direct, but not brought out "for the first time on cross-examination." The Court recognized that in *Walder, Harris,* and *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), impeachment with illegally obtained evidence was permitted because of what the defendant said on direct examination. But "[t]hese cases repudiated the statement in *Agnello* that no use at all may be made of illegally obtained evidence." The Supreme Court noted that the Court of Appeals "also relied on the statement in *Agnello* ... that

Agnello had done nothing 'to justify cross-examination in respect of the evidence claimed to have been obtained by the search.' The implication of *Walder* is that *Agnello* was a case of cross-examination having too tenuous a connection with any subject opened upon direct examination to permit impeachment by tainted evidence." 446 U.S. at 625, 100 S.Ct. 1912.

Justice Brennan joined by Justices Marshall, Stewart, and Stevens, dissented. Justice Brennan complained that the majority had passed control of the impeachment "exception to the Government, since the prosecutor can lay the predicate for admitting otherwise suppressible evidence with his own questioning." 446 U.S. at 631, 100 S.Ct. 1912. He complained the majority set up a "pitiful scarecrow" which it proceeded to demolished. He noted that both *Agnello* and *Walder* stand for the proposition "that the Government may not employ its power of cross-examination to predicate the admission of illegal evidence." *Id.* at 630, 100 S.Ct. 1912. He also noted that "cross-examination about Agnello's previous connection with cocaine was reasonably related to his direct testimony that he lacked knowledge that the commodity he was transporting was cocaine." *Id.* at 630–31, 100 S.Ct. 1912. In fact, the Brennan dissent noted that in *Walder* the "decision specifically stated that a defendant 'must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case-in-chief.'" *Id.* at 631, 100 S.Ct. 1912, citing 347 U.S. at 65, 74 S.Ct. 354. While truth-seeking is important, the dissenter thought that the Supreme Court should not aid police officers in violating the law. 446 U.S. at 633, 100 S.Ct. 1912.

Rather than analyzing truth-finding as a trial objective, the majority of this Court takes the view of the dissenters in *Havens.* Fortunately, that is not the law. Unfortunately, the majority seems to think it is. For this reason, I dissent.