GIERKE, Judge,
with whom EFFRON, Judge, joins (dissenting):
I disagree with the resolution of Issue I in the lead opinion. As the lead opinion recognizes, the first prong of United States v. Reynolds, 29 MJ 105, 109 (CMA 1989), requires that the evidence reasonably support a finding by the court members that the uncharged act occurred. In this case, there was no competent evidence before the members that appellant previously used methamphetamine. The 1994 laboratory report was admitted as Appellate Exhibit V but never presented to the members. The only evi *220 dence that appellant tested positive in 1994 was Major Glazier’s testimony. His testimony falls short on two grounds: (1) it was hearsay, because he was testifying about the conclusions of a laboratory technician who did not testify and whose report was not before the court members; and (2) he was not qualified to give expert testimony interpreting the laboratory report. Thus, as the lead opinion recognizes, the foundational requirements for proof of prior use of methamphetamine were not met. 56 MJ at 212-13.
To the extent that this Court has recognized the “doctrine of chances,” we have insisted that it be used only when there is a factual predicate demonstrating that the subsequent ingestion was under circumstances sufficiently similar to the first ingestion to justify an inference that the first ingestion was knowing. See United States v. Matthews, 53 MJ 465, 470 (2000). In other words, the similarity does not flow from the results of the urinalysis, but from the circumstances surrounding the ingestion. In the present case, there was not a sufficient factual predicate for the doctrine of chances, because there was no competent proof of the first and most significant point of similarity under the doctrine of chances, i.e., proof of prior use of methamphetamine.
Furthermore, to the extent that this Court applies the doctrine of chances, we must require that the court members be properly instructed on its application. The lead opinion recognizes that the only justification for admitting evidence of the 1994 positive urinalysis was to make sense of the doctrine of chances. 56 MJ at 213. However, the military judge’s instructions were blatantly inadequate to guide the members in their application of the doctrine of chances. The instructions contain absolutely no mention of the doctrine of chances. The instructions merely gave the members a laundry list of permissible uses under Mil. R.Evid. 404(b): to prove knowledge, to prove intent, or to rebut appellant’s claim of innocent ingestion. See United States v. Levitt, 35 MJ 114, 119-20 (CMA 1992) (“Merely reciting the purposes allowed by Mil.R.Evid. 404(b) without identifying the precise purpose for which the evidence may be used in a particular case will not suffice.”); United States v. Harrison, 942 F.2d 751, 759 (10th Cir.1991) (“court must identify a specific reason for admitting the evidence, rather than merely reciting the language of Rule 404(b).”); United States v. Cortijo-Diaz, 875 F.2d 13, 15-16 (1st Cir. 1989) (expressing dissatisfaction with “laundry-list” instruction); United States v. Rivera, 837 F.2d 906, 912-13 (10th Cir.1988) (“laundry list” of purposes allowed under Rule 404(b) not sufficient).
The instructions gave no guidance for determining how a prior urinalysis and appellant’s explanation had any bearing on the charges. They gave no guidance regarding the high degree of similarity between the two incidents that is required to invoke the doctrine of chances in rebuttal to a claim of innocent ingestion. See United States v. Martinez, 40 MJ 426, 431 (CMA 1994) (military judge must tailor instructions to facts of case); Cortijo-Diaz, supra at 16 (“‘instruction must have left the jury wondering how the [evidence] could have a bearing on’ the various items of Rule 404(b)”). In spite of the boilerplate admonition against concluding that appellant “is a bad person or has criminal tendencies,” the instructions did not preclude the members from concluding that appellant knew he was ingesting methamphetamines on the date charged because he had ingested them in 1994. In my view, the military judge’s instructions left the members totally unguided in their consideration of this highly prejudicial evidence.
Finally, I disagree with the view expressed in the lead opinion that the military judge’s limiting instructions regarding the 1994 incident guarded against the member’s misuse of this evidence. 56 MJ at 216. In my view, the instructions compounded the error by erroneously informing the members that there was competent “[ejvidenee that on 14 January of 1994, the accused submitted a urine sample that subsequently tested positive for methamphetamine,” when in fact that was no such evidence.
I would reverse the decision below and set aside the findings and sentence.