# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class CHARLES K. CARROLL**
**United States Army, Appellant**

ARMY 20240090

Headquarters, First Armored Division and Fort Bliss
Michael C. Friess and Maureen A. Kohn, Military Judges
Colonel Kristy M. Radio, Staff Judge Advocate[1]

For Appellant: Captain Julia M. McCormick, JA; Philip D. Cave, Esquire (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Lieutenant Colonel Matthew T. Grady, JA; Captain Andrew T. Bobowski, JA (on brief).

11 December 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MURDOUGH, Judge:

A military judge who applies correct legal principles in a reasonable manner does not abuse his or her discretion in deciding whether to admit evidence under Military Rule of Evidence [Mil. R. Evid.] 404(b). This straightforward principle of law guides our resolution of this case.

An enlisted panel, sitting as a general court-martial, convicted appellant, contrary to his pleas, of three specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 928b. The military judge sentenced him to a bad-conduct discharge, to be confined for 36 months, and to be reduced to the grade of E-4.

---

[1] The staff judge advocate's pre-trial advice, provided pursuant to Article 34, Uniform Code of Military Justice, 10 U.S.C. § 834, erroneously lists her rank as "Major General." We provide the correct rank here.

Appellant submits three assignments of error, one of which merits discussion but no relief.[2] Appellant asserts that the military judge not only abused her discretion in admitting certain evidence under Mil R. Evid. 404(b), but that, when compounded with other errors in the case, the error was of constitutional magnitude amounting to a fundamentally unfair trial.[3] We disagree with both portions of this assertion.

## BACKGROUND

### A. The Assaults

The appellant and the victim were at all relevant times married to each other. The victim had three daughters – ▇▇ ▇▇, and ▇▇ – who also lived in the same house with the appellant and considered him their stepfather. In May 2023, appellant became angry and started insulting ▇▇ the victim's daughter. The victim asked him to stop. He stood over the victim and strangled her on the couch to the point she lost consciousness. She regained consciousness and tried to get away. She made it to the staircase, where he pushed her onto the staircase and strangled her until she again lost consciousness. He then threw water on her, which awakened her. He continued to berate the victim. ▇▇ saw the appellant with his hands around his wife's neck while she was on the couch and both ▇▇ and ▇▇ saw him strangle her on the stairs; ▇▇ also saw him throw water on her. They woke up their youngest sister, took her into their room, and locked the door.

The victim texted appellant's mother and sent her photos of the injuries to her neck. Appellant's mother encouraged the victim to let appellant calm down, to keep herself and the girls away from him and asked whether the police had been called. The victim did not report this incident to the police.

---

[2] We have given full and fair consideration to the other assignments of error as well as the matters the appellant personally submitted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and determine they merit neither discussion nor relief.

[3] Though not specifically assigned as separate error, appellant also asserts at multiple points in his brief that his defense counsel were ineffective, including by failing to incorporate Eighth Amendment capital caselaw into their Mil. R. Evid. 404(b) objection and failing to object to expert testimony on redirect examination, both discussed *infra*. *See generally Strickland v. Washington*, 466 U.S. 668 (1984) (describing the standard for ineffective assistance of counsel). Based on our review of the record, we can conclusively determine that his defense counsel were not ineffective, no further inquiry is required, and appellant is entitled to no relief. *See United States v. Ginn*, 47 M.J. 236, 244-45 (C.A.A.F. 1997).

In August, appellant again became verbally abusive to his wife when he accused her of hiding his clothing. She asked him to calm down and, when that failed, tried to leave the room. He pushed her against the wall, placed his hands around her neck and told her, "I am going to f****** kill you," or words to that effect. She then lost consciousness, as she had during the previous assault. She awoke again to feeling wet with a chemical taste in her mouth. When appellant released her, she ran upstairs and called 911. Both ███ and ███ heard the appellant threaten to kill his wife, though they did not see this assault.

Civilian police arrived at the house and spoke with both appellant and the victim. Appellant told the police, "I might have choked her" and said that he "pushed her." He demonstrated how he gripped her with an open grip; this demonstration was captured on police cameras. Although police did not directly observe any visible injuries on the victim, they took photographs of her neck which displayed visible signs of injury. In the days following, the victim took her own photographs to show the progression of the injuries.

During this on-scene questioning, the police asked appellant if a similar incident had occurred in May.[4] Appellant responded "I knew that b**** was going to bring that up. If I had the gun, she wouldn't be walking right now," or words to that effect.

Appellant was later charged with, *inter alia*, two specifications of domestic violence by strangulation, one each for the May and August 2023 incidents, and one specification of domestic violence by committing an offense with intent to threaten his spouse for the August 2023 incident.

---

[4] The record is not clear as to what prompted this question.

*B. The Rule 404(b) litigation*

The prosecution gave notice[5] to the defense of three "prior crimes, wrongs, or acts" it sought to introduce under Mil. R. Evid. 404(b).[6] These included:

> (1) After [the August assault], the accused threw hand sanitizer or a similar substance on his wife, the victim in this case, and took actions which caused her to believe that he was going to try to light her on fire. . . .
>
> (2) Between October 2022 and May 2023, the accused assaulted and strangled his wife . . . .
>
> (3) On multiple occasions, the accused has been verbally abusive to his wife . . . .

The prosecution offered all three of these items as "evidence that the misconduct in [the domestic violence specifications] was intentional and not the product of an accident or mistake." The defense filed a motion *in limine* to exclude this evidence. In its written response, the government reiterated its proffered purpose of intent and absence of mistake but also added *modus operandi* as an additional basis for admissibility. At the Article 39(a) session on this motion, the victim testified to a prior, uncharged strangulation occurring in August 2022, rather than between October and May. She also testified to other acts of prior physical and verbal abuse. Concerning the substance thrown on her, described in the first item above, she testified that she believed it was hand sanitizer as proffered.

After receiving evidence and argument, the military judge ruled orally that the appellant throwing hand sanitizer on the victim was *res gestae* of the August assault, including the threat to kill the victim. She also ruled that the prior physical and verbal abuse, including strangulation, were admissible under Mil. R. Evid. 404(b) as

---

[5] Appellant points out that the government's notice was nine days late per the military judge's pretrial order. However, at trial, the appellant did not seek relief on this basis or articulate any prejudice from the lateness, and the military judge chose not to hold the government to this deadline. Provided that the delay in notice "does not violate due process concerns, it is not the role of this Court to police compliance with a military judge's scheduling order. Instead, it lies within the sound discretion of the military judge to do so." *United States v. Wilson*, 84 M.J. 383, 389 (C.A.A.F. 2024).

[6] The government also provided other notices of other prior acts by the appellant; the military judge ruled inadmissible the evidence described in those separate notices and they are not at issue on appeal.

evidence of intent, relying primarily on *United States v. Jenkins*, 48 M.J. 594 (Army Ct. Crim. App. 1998). She did not address the government's contention in its written brief that these acts were also *modus operandi* evidence.

### C. Trial

At trial, the government elicited appellant's statements to the police and admitted the recording of the 911 call, the video from the police body camera wherein appellant demonstrated how he grabbed the victim, and pictures of the victim's injuries. The victim testified generally consistent with her prior testimony in the Article 39(a) session, including the uncharged strangulation from August 2022. She did not testify that the substance thrown on her in August 2023 was hand sanitizer; she only described the wet feeling and the chemical taste in her mouth.[7]

The government concluded its case-in-chief with testimony from an expert in strangulation and forensic nursing. As part of her expert qualifications, she testified that, over a decade or more of nursing experience, she had treated over a hundred patients whose chief clinical complaint was strangulation. On cross-examination, the defense counsel repeatedly elicited testimony from this witness that the victim had not sought medical treatment, which could have either confirmed or refuted her account of being strangled. On redirect, the trial counsel then asked:

> Q. How many of your patients that report being strangled when they meet with you say this isn't the first time it's happened, but it's the first time I've come to the E.R.?
>
> A. I will say 99 percent of the times, it's not the first time, [e]specially in the intimate partner violence or domestic violence. It's usually a second or third time they come to us . . . .

Following the presentation of evidence, the military judge gave the following "other crimes, wrongs, or acts evidence" instruction:[8]

> You may consider evidence that the accused may have threw [sic] a substance on [the victim] while she was unconscious on 16 August 2023, and that between August 2022 and May

---

[7] In the admitted 911 call and her testimony on cross-examination she said that it was "like poison." In closing argument, the trial counsel disclaimed any theory or belief on the part of the government that the appellant had tried to poison his wife.

[8] *See generally* Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 7-13-1 (29 Feb. 2020) [Benchbook].

2023, on various occasions, the accused may have physically assaulted, strangled, and verbally abused [the victim] for the limited purpose of its tendency, if any, to prove that the accused intended to strangle and threaten [the victim] on 23 May 2023 and 16 August 2023.

You may not consider this evidence for any other purpose and you may not conclude from this evidence that the accused is a bad person or has general criminal tendencies and that he therefore committed the offenses charged.[9]

In closing argument, trial counsel compared the two charged events, pointing out that the first time the appellant threw water on the victim and the second time some other liquid, and then asserted, "This is almost his signature. Strangle her, passes out, revive her." Later in closing, the trial counsel argued:

This case has nothing to do with an accident, nothing to do with self-defense. It's an intentional crime. How do we know it's an intentional crime? How do we know these were intentional acts? It's not the first time. . . . You can use those other incidents. Those can be used to prove that the charges were intentional acts. When he committed those crimes [they] were intentional because of what's happened in the past.

The panel convicted appellant of all three domestic violence specifications.

## LAW AND DISCUSSION

### A. Rule 404(b) and the Reynolds Test

Military Rule of Evidence 404(b) states that "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Mil. R. Evid. 404(b)(1). This is often expressed as a prohibition on "propensity" evidence. However, such "evidence may be admissible for another purpose, such as [but not limited to] proving motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident." Mil R. Evid. 404(b)(2).

---

[9] The instruction, as captured in the trial transcript, differs slightly. For clarity, we cite to the written instructions provided to the parties at trial and included in the record as Appellate Exhibit XXXVI.

Specifically concerning such prior acts by the accused, Mil. R. Evid. 404(b) requires the trial counsel to provide reasonable, written notice before trial of evidence of any "crime, wrong, or act" of the accused the trial counsel intends to offer at trial, as well as the "permitted purpose for which the trial counsel intends to offer the evidence and the reasoning that supports the purpose." Mil. R. Evid. 404(b)(3).

The proponent of the evidence must satisfy the three-part *Reynolds* test:

1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts?
2. What "fact . . . of consequence" is made "more" or "less probable" by the existence of this evidence?
3. Is the "probative value . . . substantially outweighed by the danger of unfair prejudice?"

*United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989) (citations omitted).

When assessing whether the court members could reasonably find the appellant committed the alleged crime, wrong, or act under the first part of the *Reynolds* test, "the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of evidence." *United States v. Mirandez-Gonzalez*, 26 M.J. 411, 413-14 (C.M.A. 1988) (quoting *Huddleston v. United States*, 485 U.S. 681, 690 (1988)); *accord United States v. Robles-Ramos*, 47 M.J. 474, 476 (C.A.A.F. 1998). "[T]he standard for meeting this factor is quite low." *United States v. Dorsey*, 38 M.J. 244, 246 (C.M.A. 1993).

"*Res gestae* is defined as the events at issue, or other events contemporaneous with them." *United States v. St. Jean*, 83 M.J. 109, 111 n.2 (C.A.A.F. 2023) (alteration omitted) (citation omitted). Evidence is *res gestae* of the charged offense when it is "inexorably intertwined with the alleged offense . . . ." and is "'part of the same transaction . . . .'" *United States v. Gaddy*, ARMY 20150227, 2017 CCA LEXIS 179, at *5 (Army Ct. Crim. App. 20 Mar. 2017) (mem. op.) (quoting *United States v. Peel*, 29 M.J. 235, 239 (C.A.A.F. 1989)), pet. denied, 76 M.J. 430 (C.A.A.F. 2017). The doctrine of *res gestae* permits introducing evidence in order to "prevent[] a gap in the narrative of occurrences—a gap which might . . . induce[] unwarranted speculation by the members as to what had transpired but had not been revealed to them." *United States v. Thomas*, 11 M.J. 388, 393 (C.M.A. 1981). If conduct is *res gestae* of a charged offense, even if it may also be offered for a Mil. R. Evid. 404(b) non-propensity purpose, no Mil. R. Evid 404(b) notice is necessary. *United States v. Metz*, 34 M.J. 349, 351 n.* (C.M.A. 1992).

We review a military judge's decision to admit or exclude evidence under this rule for an abuse of discretion. *United States v. Greene-Watson*, 85 M.J. 340, 345 (C.A.A.F. 2025). The military judge abuses her discretion if: (1) her findings of fact are not supported by the evidence of record, (2) she uses incorrect legal principles, or (3) her application of the correct legal principles to the fact is clearly unreasonable. *Id.*

When the defense does not object to evidence when offered or argument when made, we review for plain error. *United States v. Leipart*, 85 M.J. 35, 42 (C.A.A.F. 2024); *United States v. Smith*, 83 M.J. 350, 355 (C.A.A.F. 2023). "Under this standard, the appellant bears the burden of establishing (1) error that is (2) clear or obvious and (3) results in material prejudice to his substantial rights." *Smith*, 83 M.J. at 355. (internal quotation marks omitted) (citation omitted).

*B. The Military Judge Did Not Abuse Her Discretion[10]*

Concerning the act of throwing hand sanitizer (or another chemical) on the victim, the military judge did not abuse her discretion in finding that this act, which represented the conclusion of the strangulation, was *res gestae* of the August 2023 strangulation and threat.

Nor did she abuse her discretion when finding that the prior verbal and physical abuse, including the prior strangulation, were admissible under Mil. R. Evid. 404(b). Following the presentation of evidence at the Article 39(a) session, the appellant conceded that the first prong was met – there was adequate evidence that the members could use to find that the predicate events occurred.[11] Particularly with this concession, the military judge did not need to make detailed findings of

---

[10] Appellant suggests that the military judge's ruling is entitled to less, or no, deference because it was not in writing. We, as well as our superior court, have both repeatedly stated that military judges receive greater deference when they fully articulate their reasoning "on the record," particularly when it comes to the balancing test of Mil. R. Evid. 403 (the third *Reynolds* prong). *See, e.g., United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010); *St. Jean*, 83 M.J. at 113 (noting that the absence of the judge's reasoning from the record is not itself a basis to find error); *United States v. Heyward*, 73 M.J. 904, 907 n.6 (Army Ct. Crim. App. 2014); *United States v. Ponce*, 75 M.J. 630, 634-35 (Army Ct. Crim. App. 2015). However, we have never held that the form of the ruling alters the degree of deference we afford; a well-articulated oral ruling receives as much deference as a well-articulated written ruling, and more deference than a poorly articulated written ruling.

[11] Defense counsel's precise words were, "The defense is fine for prong one. It meets the *Reynolds* test. We are not going to belabor the court's time[,]" before moving on to litigate the second and third prongs of *Reynolds*.

fact to conclude that the evidence reasonably supported a finding by the members that the appellant had committed the acts.

On the second *Reynolds* prong, the military judge relied on our prior opinion in *United States v. Jenkins*, in which we held that sufficiently similar acts of prior domestic violence against the same victim could be admissible under Mil. R. Evid. 404(b) to support an inference that the charged acts were committed with the similar intent. 48 M.J. 594, 600-01 (Army Ct. Crim. App. 1998). This was the correct legal principle, and the military judge did not apply it in an unreasonable manner.

The appellant's intent was relevant to all of the offenses of which he was eventually convicted. The first two domestic violence specifications asserted that he committed domestic violence by strangulation, which is "[i]ntentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck . . . ." *Manual for Courts-Martial, United States* (2024 ed.), pt. IV, ¶ 77.c.(5)(c)(iii) (emphasis added).[12] The government's consistent theory through the trial was that the appellant had acted intentionally on each occasion. The third domestic violence specification alleged that the appellant committed an offense "with the intent to threaten" his spouse.

Appellant argues, as he did at trial, that uncharged evidence of intent was irrelevant and thus inadmissible under Mil. R. Evid. 404(b), in part because the defense never presented a defense of accident or mistake. At trial, the appellant accurately cited *United States v. Thompson*, 63 M.J. 228 (C.A.A.F. 2006), in which our superior court held that it was error for a military judge to admit uncharged acts to show knowledge and absence of mistake when the accused had not raised either issue. On appeal, appellant cites to *United States v. Matthews*, 53 M.J. 465 (C.A.A.F. 2000), which held similarly, although in *Matthews* the uncharged misconduct occurred *after* the charged event, distinguishing both *Thompson* and the present case. Nonetheless, a year after *Thompson*, the same court rejected the argument that "intent evidence is never admissible unless a defendant specifically defends on the ground of either lack of the requisite intent or accident." *United States v. Harrow*, 65 M.J. 190, 202 (C.A.A.F. 2007). "[E]vidence of intent and lack of accident may be admitted regardless of whether a defendant argues lack of intent

---

[12] The President promulgated this definition in January 2022 via Executive Order 14,062, and it was in effect at the time of the May 2023 offense. 87 Fed. Reg. 4,763, 4,772 (January 26, 2022). It was then printed in the next edition of the *Manual* in July 2023, and it has remained the same since January 2022.

because every element of a crime must be proven by the prosecution." *Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 69 (1991)).[13]

The military judge applied these correct legal principles when she ruled that intent was a fact at issue and evidence of uncharged misconduct offered to prove intent satisfied the second *Reynolds* prong. She satisfied the third *Reynolds* prong with an adequate Rule 403 analysis placed on the record. In sum, her ruling was not an abuse of discretion.

### C. *The other asserted errors are not a constitutional violation*

Appellant argues that, under *Andrew v. White*, 604 U.S. 86 (2025) (per curiam), the admission of the above-described evidence coupled with the admission of other evidence amounted to a violation of constitutional due process. *Andrew* applies language from the holding of *Payne v. Tennessee*, 501 U.S. 808 (1991), for the principle that the introduction of evidence that is "'so unfairly prejudicial that it renders the trial fundamentally unfair . . . .'" amounts to a violation of constitutional Due Process. 604 U.S. at 87 (quoting *Payne*, 501 U.S. at 825). Both *Andrew* and *Payne* address the admissibility of victim impact statements in capital sentencing cases; neither purports to convert every evidentiary ruling into a constitutional question and neither addresses the application of either Mil. R. Evid. 404(b) or Mil. R. Evid. 403 to evidence on the merits.[14]

---

[13] Though not specifically referring to its prior contrary holding in *Thompson*, the court in *Harrow* acknowledged that "[t]his Court has dealt inconclusively with the holding of *Estelle* in prior cases." 65 M.J. at 202. The court reiterated that "[t]his Court's intermittent efforts to distinguish *Estelle* as a Supreme Court case addressing state, rather than federal, law does not detract from the force of the basic tenet asserted by the Supreme Court: a simple plea of not guilty puts the prosecution to its proof as to all elements of the crime charged." *Id.* (cleaned up). Although *Harrow* did not explicitly overrule *Thompson*, both due to its recency and reliance on directly applicable Supreme Court precedent, we consider *Harrow* to be the controlling authority.

[14] The dissent in *Andrew* points out that "*Payne* . . . does not establish a test for determining when a trial is so infected by prejudicial evidence as to be fundamentally unfair. . . . or what the gap is, between, say a garden-variety Federal Rule of Evidence 403 error and a fundamentally unfair trial." 604 U.S. at 107 (Thomas, J., dissenting). The majority then clarifies, "this Court did not hold in *Payne* that the introduction of all irrelevant evidence violates the Due Process Clause," and cites to *Estelle v. McGuire* (discussed *supra*) as an example of a case where "the challenged evidence" did not "so infuse the trial with unfairness as to deny due process of law." 604 U.S. at 93 n.3 (cleaned up).

10

Wherever the line at which accumulation of evidentiary errors becomes fundamentally, constitutionally unfair, this case is far from it. First, the appellant's argument centers around the military judge's Mil. R. Evid. 404(b) ruling, which, as discussed above was not error at all. The appellant goes on to argue, "even if each piece of evidence might have been admissible under the Mil. R. Evid. 403 balancing test, their overall impact fatally infects the trial's fairness, triggering due process concerns." The remaining errors that appellant points to are: (1) the government's expert testimony, and (2) trial counsel's closing argument. Because neither drew an objection, we review for plain error. We conclude, to the extent they amount to any error at all, neither resulted in material prejudice to the appellant's substantial rights, let alone a fundamentally unfair trial.

Generally, expert testimony that relies on statistics of a "typical" case can be fraught with risk. *See Harrow*, 65 M.J. at 203-04 (expert testimony about "most common" characteristics of an abuser inadmissible profile evidence); *see also, United States v. Brooks*, 64 M.J. 325, 329 (C.A.A.F. 2007) (expert testimony about the percentage of false allegations inadmissible "human lie-detector" testimony). But the posture of the case and the timing of the question matter. *See, e.g., United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (distinguishing *Brooks* when the statistics were elicited by the defense counsel on cross-examination). Here, the defense on cross-examination elicited from the government expert that the victim had not received medical care,[15] with follow-on questions to suggest that the victim's account was less credible because she had not had her injuries medically documented. The trial counsel then asked the expert *on redirect* a question specifically to counter this inference, to which the expert gave a statistical estimate derived from her own professional experience. Under these circumstances, it was not error, let alone plain or obvious error, to use redirect examination to counter the inference that appellant initially raised on cross.

Next we turn to the trial counsel's argument. "Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). "[I]t is appropriate for trial counsel to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence. He may not, however . . . ask [the panel] to convict the accused on the basis of criminal predisposition." *Id.* (internal quotation marks omitted) (citations omitted).

The trial counsel's argument that the prior uncharged abuse "can be used to prove that the charges were intentional acts" was proper argument, consistent with the judge's ruling and instructions, fairly arguing the reasonable and legally permissible inference that the similar prior acts demonstrated appellant acted with

---

[15] The expert's personal knowledge of these facts came from her review of the case files and listening to the witnesses' testimony in-court.

similar intent in committing the charged offenses. This is the entire reason for Mil. R. Evid. 404(b).

The trial counsel's statement that the appellant's throwing liquid on the victim after each strangulation was "almost . . . his signature" is a closer call. The military judge ruled this as *res gestae*, which would take it outside the constraints of Mil. R. Evid. 404(b). Notwithstanding her ruling that this event was *res gestae*, the military judge's instruction confined the members' consideration of this evidence to the question of intent. Nonetheless, the trial counsel's description of a "signature" was a *modus operandi* argument,[16] which exceeded the government's initial Mil. R. Evid. 404(b) notice and, more importantly, the military judge's limiting instruction.

Even were we to assume error, we would find no prejudice. In assessing the prejudicial impact of improper argument, we consider "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." *United States v. Fletcher*, 62 M.J 175, 184 (C.A.A.F. 2005). "In other words, prosecutorial misconduct by a trial counsel will require reversal when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Id.* On the first factor, the reference to a "signature" mode of committing the offenses is only two short sentences in the trial counsel's entire argument. Trial counsel described properly admitted evidence; he just suggested an improper inference. Thus, the severity is slight. On the second factor, the military judge had previously instructed the members on the limited purpose for which they may use the evidence, and she gave the standard instruction following argument that, in a dispute between counsel's argument and her instructions, the instructions controlled.[17] This boilerplate instruction did not directly address the reference to a "signature," and in other cases may have been insufficient if the misconduct had been more severe or pervasive. However, in this case, the proof of guilt was considerable – including multiple percipient witnesses to each event, multiple partial admissions by appellant, and documented injuries from the August assault. Overall, we are confident that the members convicted appellant on the basis of the evidence alone, notwithstanding trial counsel's brief reference to a "signature" way of assaulting his wife.

---

[16] *Modus operandi* evidence is normally relevant only to prove identity, but may be admissible in other situations when the acts are "significantly similar" and "evidence a *particular* 'design' or 'system' . . . ." *Reynolds*, 29 M.J. at 110 (emphasis in original) (citations omitted).

[17] "Counsel have referred to instructions that I gave you. If there is any inconsistency between what counsel have said about the instructions and the instructions which I gave you, you must accept my statement as being correct." Benchbook, para. 2-15-13.

We find no plain error, let alone error amounting to a fundamentally unfair trial and violation of constitutional due process.

## CONCLUSION

The findings and the sentence are AFFIRMED.[18]

Senior Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

---

[18] The Statement of Trial Results, incorporated into the Judgment, is amended to renumber the charge alleging a violation of Article 109, to which appellant pled and was found not guilty, as Charge III, consistent with the designation of this charge at the time of referral and arraignment.