UNITED STATES, Appellee

v.

Bud W. TYNDALE, Staff Sergeant
U.S. Marine Corps, Appellant

No. 00-0113

Crim. App. No. 97-1741

United States Court of Appeals for the Armed Forces

Argued October 10, 2000

Decided December 17, 2001

BAKER, J., delivered the judgement of the Court.
CRAWFORD, C.J., filed an opinion concurring in part and in
the result.  SULLIVAN, S.J., filed an opinion concurring in
the result.  GIERKE, J., filed a dissenting opinion, in
which EFFRON, J., joined.


Counsel


For Appellant:  Lieutenant M. Eric Eversole, JAGC, USNR
(argued); Major Dale E. Anderson, USMC.


For Appellee:  Captain William J. Collins, USMC (argued);
Colonel Kevin M. Sandkuhler, USMC, and Lieutenant Commander
Philip L. Sundel, JAGC, USNR (on brief); Lieutenant Colonel
Marc W. Fisher, Jr., USMC.


Military Judges:  B. P. Jenkins and A. W. Keller.

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.**

United States vs. Tyndale, No.00-0113/MC

Judge BAKER delivered the judgement of the Court.

In 1997, a special court-martial composed of officer members convicted appellant, contrary to his pleas, of wrongful use of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Appellant was sentenced to a bad-conduct discharge and reduction to pay grade E-3. The convening authority approved this sentence and, except for the bad-conduct discharge, ordered it executed. The Court of Criminal Appeals affirmed. 51 MJ 616 (1999).

This Court granted review of the following issue:

WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED BY AFFIRMING THE MILITARY JUDGE'S ADMISSION OF EVIDENCE OF A PRIOR POSITIVE URINALYSIS AND PRIOR INNOCENT INGESTION DEFENSE.

and specified review of the following issue:

WHETHER, WITH RESPECT TO THE ADMISSION OF POLYGRAPH EVIDENCE: (1) THE MILITARY JUDGE ERRED WHEN HE ADMITTED EVIDENCE OF POLYGRAPH EXAMINATIONS AT APPELLANT'S COURT-MARTIAL HELD AFTER THIS COURT'S DECISION IN UNITED STATES V. SCHEFFER, 44 MJ 442 (1996), AND BEFORE THE SUPREME COURT'S REVERSAL OF THAT DECISION IN UNITED STATES V. SCHEFFER, 523 U.S. 303 (1998); (2) BY FIRST INTRODUCING EVIDENCE OF TWO EARLIER POLYGRAPH EXAMINATIONS AND BY NOT OBJECTING TO THE PROSECUTION'S INTRODUCTION OF EVIDENCE OF A THIRD POLYGRAPH EXAMINATION IN REBUTTAL, APPELLANT FORFEITED ANY ERROR IN ADMITTING THE PROSECUTION'S POLYGRAPH EVIDENCE; AND (3) ANY ERROR IN ADMITTING POLYGRAPH EVIDENCE OPERATED TO APPELLANT'S SUBSTANTIAL PREJUDICE.

United States vs. Tyndale, No.00-0113/MC

For the reasons set forth below, the decision of the Court of Criminal Appeals is affirmed.

Background

In January 1994, appellant's urine sample tested positive for methamphetamine. He was tried by a special court-martial consisting of officer members and was acquitted. Appellant did not contest that he tested positive for methamphetamine, but instead, presented the defense of innocent ingestion. Specifically, at that court-martial, he asserted that someone had, without his knowledge, placed the drug in coffee he was served while playing guitar with his brother and other individuals at a residence near Ocean Beach in San Diego.

On Monday, October 7, 1996, appellant submitted a urine sample that again tested positive for methamphetamine. Appellant testified at trial regarding his activities several days before the urinalysis. He stated that he was an experienced musician and had played at a number of venues in the area. On the Saturday night prior to the urinalysis, he had agreed to play guitar at a private party in Dana Point, California, for a fee of $75. Appellant and his brother showed up at the party at about 6:00 p.m., where there were between forty-five and sixty

people present.  He described the crowd as "pretty radical."  Although he never got the name of the person who hired him, he played "halfway through the night" before being paid in cash.  He further explained that around midnight, his brother told him there was drug use going on in another part of the residence.   Nonetheless, appellant remained at the party and, by his account, consumed about a case of beer over the course of the evening.

Following receipt of the results of the urinalysis, appellant told his battalion commander that he did not know how he tested positive and that someone must have slipped him the drug in a drink at a party where he had played his guitar the weekend prior.  Since the gathering was a "moving out" party, appellant was unable to subsequently locate the apartment or its occupants.

At the outset of appellant's trial in April 1997, trial counsel moved for a preliminary ruling admitting evidence of appellant's 1994 positive urinalysis and appellant's accompanying explanation regarding innocent ingestion.  The Government sought to introduce this information into evidence in the form of testimony from

Major Glazier, the prosecutor during appellant's 1994 court-martial.[1]

The Government argued that the testimony was legally and logically relevant under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States (1995 ed.),[2] on the issue of knowledge.  Defense counsel objected, arguing that appellant's prior urinalysis was being offered to demonstrate that appellant was predisposed to commit the crime.  Further, even if this hurdle were overcome, the evidence was outweighed by the danger of unfair prejudice. And finally, he asserted that the prior urinalysis did not prove that appellant committed the prior act.  The military judge preliminarily ruled the evidence of the January 1994 urinalysis could only be admitted in rebuttal to a defense of innocent ingestion.

During the defense case, the Government again argued for admissibility of this evidence, contending that the defense counsel opened the door when he asked appellant, "Did you knowingly use, let me restate that, did you use

---

[1] Appellant having been acquitted, the Government was not required to keep a verbatim record of trial.  RCM 1103(e), Manual for Courts-Martial, United States (1995 ed.).

[2] Manual provisions are cited to the version in effect at the time of appellant's court-martial.  The current versions are unchanged.

drugs?"  Defense counsel's objection was sustained, and the defense proceeded with testimony in the nature of character witnesses as to appellant's truthfulness, and testimony regarding two exculpatory polygraphs.

Defense counsel asked the first polygrapher what relevant questions were asked of appellant.  The polygrapher responded, "In the past two years have you knowingly taken any unlawful substances?" and, "Other than for medicinal purposes, have you taken any drugs over the past two years?"  Trial counsel objected, on among other grounds, that an additional relevant question had been omitted from the witness's answer, to wit, "Do you suspect that anyone may have spiked your beverages while you were performing your music gig over the weekend before your urinalysis test?"  Appellant had answered yes to this question.  The witness also opined that these polygraph results lacked indicia of deception.

The defense put on a second polygrapher who testified that there were two relevant questions asked:  "Did you knowingly use any illegal drugs during October 1996?" and, "[A]t any time within one week prior to your October 96' positive urinalysis, did you intentionally ingest methamphetamine or amphetamine?" (Emphasis added.)  He

6

further stated that appellant had showed a lack of deception as to these questions.

Upon conclusion of the defense case, the Government again moved to admit evidence of the 1994 urinalysis and appellant's corresponding explanation of innocent ingestion. As discussed below, this time, the military judge admitted the evidence. Trial counsel then proceeded in rebuttal with the testimony of Major Glazier. In addition, to rebut the defense polygraph evidence, an examiner from the Naval Criminal Investigative Service testified that appellant had shown deception on a polygraph he administered. Defense counsel did not object. In fact, he expressly acceded on the record to admission of this testimony.

## Admission of the Prior Urinalysis

Mil.R.Evid. 404(a) prohibits admission of evidence of a person's character for the purpose of proving that the person acted in conformity therewith on a particular occasion. Therefore, in the past, this Court has held that the mere fact a person used drugs at a time prior to the charged offense does not make it more or less probable that the person knowingly used drugs on the date charged. United States v. Cousins, 35 MJ 70, 74 (CMA 1992). More

specifically, the Court has rejected the notion that evidence of a prior ingestion alone rebuts a claim that a subsequent ingestion was unknowing.  United States v. Graham, 50 MJ 56 (1999).

However, evidence of prior drug use is not inadmissible per se at a court-martial.  Mil.R.Evid. 404(b) permits evidence of "other crimes, wrongs, or acts" to prove facts other than a person's character, such as "intent,…knowledge,…or absence of mistake or accident." (Emphasis added.)  The military rule, like its federal counterpart, "generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless that evidence bears upon a relevant issue in the case such as motive, opportunity, or knowledge."  Huddleston v. United States, 485 U.S. 681, 685 (1988).

The test for admissibility of evidence of other acts is "whether the evidence . . . is offered for some purpose other than to demonstrate the accused's predisposition to crime[.]"  United States v. Taylor, 53 MJ 195, 199 (2000), quoting United States v. Castillo, 29 MJ 145, 150 (CMA 1989).  This Court has consistently held that Mil.R.Evid. 404(b) is a "rule of inclusion."  See, e.g., United States v. Tanksley, 54 MJ 169, 175-76 (2000); United States v.

8

United States vs. Tyndale, No.00-0113/MC

Baumann, 54 MJ 100, 104 (2000); United States v. Browning, 54 MJ 1, 6 (2000).

Evidence offered under Mil.R.Evid. 404(b) must meet three criteria for admissibility.  First, the evidence must reasonably support a finding by the court members that appellant committed the prior crimes, wrongs, or acts.  Second, the evidence must make a fact of consequence more or less probable.  Third, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice.  United States v. Reynolds, 29 MJ 105, 109 (CMA 1989); Mil.R.Evid. 401 & 403.

(1) Reasonable Support.  In this case, the "prior acts" the Government sought to introduce at trial were (a) a prior positive urinalysis from 1994 to show that appellant ingested methamphetamine on that occasion and (b) statements made by appellant to explain the circumstances under which he may have unknowingly ingested the substance. As for the urinalysis, the Government sought to show the fact of ingestion alone, as opposed to an effort to raise the inference of knowing and wrongful use on the prior occasion for which appellant was acquitted.

Neither during his colloquies with the military judge nor during his closing comments to the members did trial counsel argue wrongfulness or knowledge, as those elements

9

related to the 1994 ingestion.  Moreover, had he done so, this Court's holding in Graham would have required him to follow the foundational rules established under United States v. Harper, 22 MJ 157 (CMA 1986), United States v. Murphy, 23 MJ 310 (CMA 1987), and United States v. Ford, 23 MJ 331 (CMA 1987).

Trial counsel sought to use appellant's explanation of the circumstances related  to the 1994 positive result to rebut appellant's claim that his 1996 ingestion was unknowing and innocent.  However, the previous urinalysis result and the statements were interdependent, such that the prosecution could not have offered one without the other.  Admission of the urinalysis result without some factual predicate would have been precluded.  United States v. Matthews, 53 MJ 465, 470 (2000).  Likewise, introduction of the statements without reference to the positive result would have made little sense, and in any event, would have led members back to appellant's 1994 urinalysis as the predicate for those statements.

To satisfy the first requirement under Reynolds, trial counsel introduced a stipulation of fact from appellant's first court-martial to show the sample submitted and subsequently analyzed in that case was appellant's.  In addition, through the testimony of Major Glazier, he

elicited appellant's out-of-court statements regarding the urinalysis result and the related circumstances. Thus, as a matter of law, this evidence reasonably supported a finding by the members that appellant ingested methamphetamine in 1994, and that he made the statements regarding the circumstances related to that ingestion.

(2) Probative Value. The Government offered the evidence of the previous urinalysis and the related circumstances on the issue of appellant's knowledge and to rebut his theory of how he may have unknowingly ingested methamphetamine on this occasion, i.e., to reduce the probability that appellant would again have found himself situated in similar, questionable circumstances. The question, then, is whether this evidence made the fact of appellant's knowing use of methamphetamine on this occasion more or less probable.

Like the majority of courts, this Court has accepted the doctrine of chances as a viable theory of logical relevance. Matthews, 53 MJ at 470. This doctrine posits that it is unlikely a defendant would be repeatedly, innocently involved in similar, suspicious circumstances. Id.; 2 Wigmore on Evidence § 242 at 45 (Chadbourne rev. 1979) ("The doctrine of chances and the experience of conduct tell us that accident and inadvertence are rare and

casual; so that the recurrence of a similar act tends to persuade us that it is not to be explained as inadvertent or accidental.").

As the doctrine suggests, to avail oneself of its use, the proponent of the evidence must show that the "other acts" are sufficiently similar.  See Matthews, supra. While the factual bases at issue between the charged and uncharged acts need not mirror one another, there must be more than "the crudest sort" of similarities between the two.  Id. (quoting United States v. Mayans, 17 F.3d 1174, 1183 (9th Cir. 1994)).  Otherwise, there is too great a risk that minor similarities will be used to bootstrap prior acts into courts-martial, with all the attendant risks that members will infer the accused is a bad person or convict on the basis of the prior act.  Thus, here, the Government was required to show that the previous ingestion of methamphetamine was under circumstances sufficiently similar to those related to the charged instance of use in order to avail itself of the doctrine of chances.

Appellant's explanation of the circumstances that might have resulted in his unknowing ingestion of methamphetamine in 1994, the uncharged act, were as follows:  Appellant and his brother accompanied an individual whom he had just met, and known only to them as

12

Chris, to an apartment to play music with several other individuals. Appellant described the individuals at the apartment as having "long hair [and] tattoos," people who might be "druggies."

He further related that while at the residence, someone made him a cup of coffee, and he subsequently tested positive for methamphetamine. Appellant subsequently located Chris, who ostensibly agreed to testify on appellant's behalf in support of his theory of innocent ingestion. However, according to appellant, the contact number for Chris proved to be false, and Chris was neither seen nor heard from again.

There are any number of similarities between appellant's 1994 and 1996 accounts. In both instances, appellant:

(1) performed at a party frequented by "druggies," or where drug use was reported and he accepted open beverages;

(2) was unable to either identify or locate the apartment occupants because they moved out;

(3) was unable to locate the apartment;

(4) did not ask civilian or government authorities for assistance in locating the individuals he

argued had secretly placed methamphetamine in his drinks; and

(5)  testified in both instances that his brother was the only witness available to testify on his behalf as to the events at the residences.

While the circumstances in 1994 did not mirror those related to the 1996 use, they were substantially similar and were clearly probative on the issue of whether appellant plausibly found himself in a similar circumstance in 1996 where he might unknowingly be given a controlled substance.  This evidence met the requirements for logical relevance.

It is worth pausing here to make the point that while the doctrine of chances is a viable theory of logical relevance, it is not a roll of the appellate dice.  Rather, as illustrated here, its application is limited to those circumstances where actions are sufficiently similar to demonstratively contribute to the truth finding process. Its use should not be frequent, except in rare factual settings such as the one presented in this case.

(3)  Danger of Prejudice.  It is also worth noting the significant, potential danger presented by this type of evidence, particularly in cases involving prior urinalysis testing.  In the absence of proper precautions taken by the

military judge, court members may consider such evidence for the very purpose for which it may not be used, viz., that the accused is a bad person, and that if he did it before, he probably did it this time.  The accused may, in essence, be convicted not on the basis of the evidence at trial, but based on the prior act instead.  These concerns are heightened where the evidence in question arose in the context of a court-martial at which the accused was acquitted.

Careful weighing of such evidence by the military judge to ensure its probative value is not substantially outweighed by the danger of unfair prejudice to the accused is one such precaution.  Proper instruction to the members concerning the narrow, limited purpose for which this evidence may be considered is another.  In this case, the evidence offered relating to appellant's 1994 account, linked as it was to his prior urinalysis, was unquestionably prejudicial.  However, the offered evidence was also unquestionably probative of the credibility of appellant's 1996 defense.

The military judge conducted the requisite balancing on the record and determined that admission of this evidence would not unfairly prejudice appellant.  A military judge enjoys wide discretion under Mil.R.Evid.

15

403. United States v. Phillips, 52 MJ 268, 272 (2000).

Where the military judge properly weighs the evidence under

Mil.R.Evid. 403 and articulates the reasons for admitting

the evidence, this Court will reverse only for a clear

abuse of discretion. United States v. Browning, 54 MJ 1, 7

(2000).

Throughout the trial, the military judge was clearly

concerned about the prejudicial effect of this evidence.

Prior to trial on the merits, the issue of admissibility

was litigated in limine. As a result, after hearing

evidence on the motion and argument from both sides, he

made a preliminary ruling that the evidence would be

admissible in the Government's case on rebuttal, but only

if the defense rested its case on the theory that

methamphetamine had been "surreptitiously inserted" into

appellant's drink at the Dana Point party.[3]

The military judge further ruled that should this be

the case, the evidence would not be unfairly prejudicial in

rebutting such a defense because it was "indispensable for

a full understanding of the charged offense," and it did

not "tend to persuade by an illegitimate means." Later,

---

[3] Appellant Exhibit VI is titled "NOTICE OF THE DEFENSE'S INTENT TO OFFER THE DEFENSE OF INNOCENT INGESTION." This document outlines the defense theory as to how appellant may have unknowingly ingested methamphetamine on the night of October 5, 1996, at the Dana Point party.

16

after appellant's testimony on direct, the military judge

rejected trial counsel's contention that he should be

allowed to cross-examine on the 1994 urinalysis and related

circumstances.

Indeed, it was not until after the circumstances of

the 1996 Dana Point party were received in evidence and the

defense introduced evidence from one of its polygraphers

that appellant did not intentionally ingest methamphetamine[4]

that the military judge ruled trial counsel could introduce

the evidence of the previous urinalysis and appellant's

statements relating thereto.  This evidence was used to

challenge the credibility of appellant's argument that

someone at the Dana Point party may have slipped the

illegal substance into his drink.  Therefore, the military

judge did not abuse his discretion on this issue.

Finally, the military judge gave a clear and narrowly

crafted instruction cautioning the members that they could

only consider the evidence of the 1994 urinalysis on the

issues of knowledge and intent, and to rebut the issue of

innocent ingestion.  Those instructions were as follows:

> Evidence that on 14 January of 1994, the accused
> submitted a urine sample that subsequently tested
> positive for methamphetamine may be considered by

---

[4] Trial counsel also successfully argued at this point for inclusion of appellant's additional polygraph statement that he believed his drink had been spiked.

you for the limited purpose of its tendency, if
any, to:

One, prove knowledge on the part of the
accused that he wrongfully used
amphetamine/methamphetamine;

Two, to prove that the accused intended
to use amphetamine/methamphetamine;

Three, to rebut the issue of innocent
ingestion raised by the defense.

You may not, gentlemen, consider this evidence
for any other purpose and you may not conclude
from this evidence that the accused is a bad
person or has criminal tendencies and that he,
therefore, committed the offense charged.

As noted earlier, the fact of appellant's previous positive result was so interjoined with his testimony as to why his sample might have tested positive on that occasion that neither could be divorced from the other. The record echoes throughout that both sides understood and treated the 1994 urinalysis as a vehicle for putting appellant's 1994 explanation before the members. Therefore, the military judge's reference to the urinalysis in his instruction on uncharged misconduct, as a matter of logic, included appellant's statements relating to it. Furthermore, the military judge also instructed, inter alia, on the issues of ignorance or mistake as to appellant's knowledge of the presence of the substance in his drink, circumstantial evidence, and the credibility of

witnesses. Taken together, these instructions limited the members' use of the uncharged positive result and allowed them to consider it in the context of all the other evidence in the case, including appellant's testimony. Significantly, when asked by the military judge whether they had any objections or additions to these instructions, neither side indicated they had either.

Court members are presumed to follow the military judge's instructions. United States v. Holt, 33 MJ 400, 408 (CMA 1991). There is no indication in the record that they did otherwise. Thus, these instructions guarded against the members' potential misuse of this evidence.

This Court's holding in Graham remains valid because this case is readily distinguishable. In Graham, the defense was a general denial of the charge. Graham did not allege any specific instance when the illegal substance was placed in food or drink that he subsequently ingested. 50 MJ at 59. The Court observed that there was "no fact of consequence that a positive result on a previous urinalysis, if resurrected at [that] trial, could rebut." Id. Conversely, here, appellant's testimony concerning the events at Dana Point giving rise to his positive result raised facts of consequence that could indeed be rebutted. This is a close case, and military judges should keep in

19

mind this Court's admonition in Graham that the "proverbial trial within a trial" is to be avoided. Id. Nevertheless, for reasons particular to this case, as stated above, the evidence was properly admitted.

## Admission of the Polygraph Evidence

At the time of trial, United States v. Scheffer, 44 MJ 442 (1996), was the state of the law with respect to admissibility of polygraph evidence in military trials. In Scheffer, this Court held that Mil.R.Evid. 707 was unconstitutional because the rule served as a per se exclusion of polygraph evidence offered by an accused to rebut an attack on his credibility, thereby infringing upon his Sixth Amendment right to put on a defense. Id. at 445. While appellant's case was pending review, the Supreme Court of the United States reversed Scheffer, restoring the exclusion of polygraph evidence under Mil.R.Evid. 707. Among other things, the Court concluded that "excluding polygraph evidence in all military trials. . . is a rational and proportional means of advancing the legitimate interest in barring unreliable evidence." It also concluded the rule serves the interest in "[p]reserving the court members' core function of making credibility determinations in criminal trials." United States v. Scheffer, 523 U.S. 303, 312-13 (1998).

Appellant now contends that it was error for the military judge to admit the Government's polygraph evidence to rebut the testimony of his own polygraph experts. He argues that this Court's decision in Scheffer, which governed the trial proceedings at the time, only applied to exculpatory evidence arising from a polygraph examination of an accused. Scheffer, he asserts, left in place the exclusion of any polygraph evidence offered by the Government. Appellant concedes that trial defense counsel failed to object. This failure to object notwithstanding, he argues that admission of the evidence was plain error and prays that his findings and sentence be set aside.

In Johnson v. United States, 520 U.S. 461 (1997), the Supreme Court was presented with a similar question regarding the retroactive application of a procedural rule. Johnson had been indicted for perjury. At the time of his trial, Circuit precedent dictated that the element of materiality as it pertained to that offense was a question of law for the judge to decide, and the judge had so instructed the jury. Like appellant, Johnson did not object.

While Johnson's case was in the appellate process, the Supreme Court decided United States v. Gaudin, 515 U.S. 506 (1995), which held that the issue of materiality must be

decided by the jury rather than the judge. As in appellant's case, the Supreme Court changed the applicable rule of law after trial and in the course of appellate review. In Johnson, however, the Supreme Court decided to apply the new rule retroactively and determined that the issue of the trial judge's action under the old rule could be reviewed for plain error. The instant case lends itself well to this approach.

To prevail under a plain error analysis, appellant has the burden of persuading this Court that: (1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right. United States v. Finster, 51 MJ 185, 187 (1999); United States v. Powell, 49 MJ 460, 463-65 (1998). Applying the Supreme Court's decision in Scheffer retroactively to the trial proceedings, the first two elements are clearly satisfied. (Moreover, the Government has conceded the first two elements of the analysis.) The present issue, therefore, is whether a substantial right of appellant's was materially prejudiced.

Appellant claims that this Court in Scheffer gave him the substantial right to put on polygraph evidence without

22

rebuttal from the Government.[5] Since Scheffer did not extend to government polygraphs, the erroneous admission of such evidence put his credibility on a heightened level of scrutiny by the members. Thus, he argues his rights were materially prejudiced because it prevented the members from considering his polygraph evidence to bolster his credibility.

Appellant appears to argue that he has an unqualified right to put on evidence to support his credibility. He argues that he was prejudiced because the Government's one polygraph expert arguably canceled the testimony of his two experts. Yet, other than the fact that he was convicted, he points to nothing that would support a blanket assertion that the members reached their finding of guilt solely by rejecting his experts and accepting the Government's. The members could simply have disbelieved appellant's account, notwithstanding any of the polygraph evidence. In any event, the issue of credibility was well within the province of the members.

Precedent does not support the general proposition that an accused be allowed to put his credibility in issue without challenge from the prosecution. Simply put,

---

[5] This Court's decision in Scheffer expressly left for another day the issue of admissibility of government-offered polygraph evidence. 44 MJ at 445.

United States vs. Tyndale, No.00-0113/MC

appellant has failed to carry his burden of demonstrating that his right to support his defense by bolstering his credibility with his polygraph evidence was materially prejudiced by the testimony of the Government's single polygraph expert in rebuttal.

Appellant's own erroneously admitted polygraphs likely negated any potential prejudicial error stemming from the Government's polygraph. The military judge's simultaneous errors in admitting the two sets of polygraphs left the panel with conflicting testimony regarding appellant's credibility (as well as the reliability of the polygraph, see Scheffer). As a result, there is no "grave doubt" that the claimed error had an unfair prejudicial impact on the members' deliberations. Kotteakos v. United States, 328 U.S. 750, 765 (1946); United States v. Young, 470 U.S. 1, 16-17 n.14 (1985); United States v. Fisher, 21 MJ 327, 328 (1986).[6]

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[6] In light of the Supreme Court's decision in Scheffer, and its timing, the factual basis of appellant's case is sui generis. Moreover, the Supreme Court having spoken, this case should not be viewed as a statement by this Court regarding the general merits of the polygraph.

24

United States v. Tyndale, No. 00-0113/MC

CRAWFORD, Chief Judge (concurring in part and in the result):

I concur with the lead opinion's analysis as to Issue II, and that no plain error occurred. With regard to Issue I, I agree with the result but would find the evidence admissible, not only under Mil.R.Evid. 404(b), but also under the common law theory of contradiction.

FACTS

At trial, the prosecutor made an in limine motion to admit the 1994 urinalysis result. The judge would not permit the Government to introduce the evidence as part of its case-in-chief. However, he held that the evidence could be admitted if the defense of innocent ingestion mirrored the defense at appellant's 1994 court-martial.

The defense theory of the case was similar to the one at appellant's first court-martial. Both appellant and his brother were at an all night, guitar-playing party. Additionally, appellant knew of the urinalysis test on the following Monday morning. Appellant was drinking beer during the course of the party, including drinks given to him by guests. However, he was unable to identify or contact the people at the party who might have spiked his drinks. His brother also testified as to the circumstances

surrounding the party and the inability to locate the guests afterwards.

At trial, appellant was asked: "Staff Sergeant, did you <u>knowingly</u> use -- let me rephrase that. Did you use drugs?" Appellant answered: "No, sir." Later, the judge ruled that the prosecution could introduce evidence of the 1994 test, but indicated this was not based on the cross-examination of appellant.

During <u>voir</u> <u>dire</u>, the trial defense counsel questioned the members on innocent ingestion, and gave notice of an innocent ingestion defense. Even so, appellate defense counsel argues that it was inappropriate to admit the 1994 test because its admission was predicated on the prosecutor opening the door during the cross-examination of appellant.

The Government responds that the negative inference from the testimony introduced by the defense was that this was an innocent ingestion case "strikingly similar" to what happened at the first trial.

DISCUSSION

The standard of review is whether the judge abused his discretion in admitting this evidence. <u>United States v. Sullivan</u>, 42 MJ 360, 363 (1995).

For evidence to be admissible under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States (1995

United States v. Tyndale, No. 00-0113/MC

ed.), it need not fall within a category listed but must be legally and logically relevant.

> Accordingly, the sole test under Mil.R. Evid. 404(b) is whether the evidence of the misconduct is offered for some purpose other than to demonstrate the accused's predisposition to crime and thereby to suggest that the factfinder infer that he is guilty, as charged, because he is predisposed to commit similar offenses.

United States v. Castillo, 29 MJ 145, 150 (CMA 1989).

While Reynolds is helpful, the Supreme Court in Huddleston v. United States, 485 U.S. 681, 686-87 (1988), stated:

> The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character....

> * * *

> .... Article IV of the Rules of Evidence deals with the relevancy of evidence. Rules 401 and 402 establish the broad principle that relevant evidence - evidence that makes the existence of any fact at issue more or less probable -- is admissible unless the Rules provide otherwise.

Following the tests set forth in Huddleston, I would conclude that the evidence is probative of the material issue in this case. Additionally, I would hold the evidence admissible under the theory of contradiction. The prosecution had the right to rebut and attack the evidence

educed by the defense as to innocent ingestion.  Under our adversary system, each party has the right to present favorable evidence supporting its position, and the opponent has the right to rebut or attack that evidence. Not only does the prior drug ingestion attack appellant's credibility, but it exposes the defense theory of the case. Additionally, the impeachment in this case is as to a non-collateral fact.

Even though contradiction is not expressly mentioned in the Federal Rules of Evidence, the federal courts have informally concluded that the doctrine exists.  United States v. Perez-Perez, 72 F.3d 224, 227 (1st Cir. 1995); United States v. Tarantino, 846 F.2d 1384, 1409 (D.C. Cir. 1988); United States v. Welker, 44 MJ 85 (1996); 15 FED. RULES EVID. NEWS 59 (Apr. 1990)("the federal common law of 'specific contradiction'").  However, the judge may exclude such evidence after applying the Mil.R.Evid. 403 balancing test.

In this instance, the judge did not abuse his discretion in allowing the prosecution to rebut appellant's testimony that he did not use any illicit drug. Admitting the evidence promoted the proper functioning of the adversary system.  United States v. Turner, 39 MJ 259, 267 (CMA 1994)(Crawford, J., concurring in the result).  As

in Turner, admitting the evidence here tended to "squarely contradict" the implications arising from appellant's testimony. Id.

<u>United States v. Tyndale</u>, 00-0113/MC

SULLIVAN, Senior Judge (concurring in the result):

I cannot agree with the artificial distinctions which the lead opinion draws between this case and <u>United States v. Graham</u>, 50 MJ 56 (1999). Admittedly, in <u>Graham</u>, the accused did not expressly raise a "brownie" type defense at his court-martial, and the military judge prohibited the Government from evidencing the successful "cake defense" raised by Graham at his earlier court-martial. <u>Id</u>. at 59, 61 nn.1 and 2. However, in <u>Graham</u>, a defense of innocent ingestion was implicitly raised by the appellant's exaggerated denial of knowing drug use ("no way") (<u>Id</u>. at 59-60), and the military judge specifically admitted evidence of a prior positive urinalysis result to rebut that defense. <u>Id</u>. at 57-58. A majority of this Court in <u>Graham</u> clearly indicated that a prior positive urinalysis result was not relevant for rebutting a defense of innocent ingestion. <u>Id</u>. at 59.

Today, a majority of this Court reaches a different conclusion. ___ MJ at (14). Since I disagreed with <u>Graham</u>, I agree with the Court's change of position today. <u>See</u> <u>United States v. Graham</u>, <u>supra</u> at 61-62 (Sullivan, J., dissenting) (prior positive urinalysis results are relevant to rebut defense of innocent ingestion). As I said in my dissent in <u>Graham</u>, the

United States v. Tyndale, No. 00-0113/MC

jury was entitled to know that the appellant was in reality asserting that "he was struck by lightning twice."  Id. at 62.


On the second issue, I find no plain error in the admission of the Government's polygraph evidence in this case, although I disagree with the lead opinion's citation of United States v. Powell, 49 MJ 460 (1998).  See generally Johnson v. United States, 520 U.S. 461 (1997); United States v. Olano, 507 U.S. 725 (1993).  Clearly, error occurred in this case under Mil. R. Evid. 707(a), Manual for Courts-Martial, United States (1995 ed.).  It states: "Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take . . . a polygraph examination shall not be admitted into evidence.  See United States v. Scheffer, 523 U.S. 303 (1998).  However, since both parties admitted contradictory polygraph testimony, appellant has failed to show material prejudice.  See United States v. Tanksley, 54 MJ 169, 173 (2000); United States v. Wilson, 54 MJ 57, 60-62 (2000) (Sullivan, J., concurring in part and dissenting in part).  Accordingly, I join in affirming this case.

2

GIERKE, Judge, with whom EFFRON, Judge, joins (dissenting):

I disagree with the resolution of Issue I in the lead opinion. As the lead opinion recognizes, the first prong of United States v. Reynolds, 29 MJ 105, 109 (CMA 1989), requires that the evidence reasonably support a finding by the court members that the uncharged act occurred. In this case, there was no competent evidence before the members that appellant previously used methamphetamine. The 1994 laboratory report was admitted as Appellate Exhibit V but never presented to the members. The only evidence that appellant tested positive in 1994 was Major Glazier's testimony. His testimony falls short on two grounds: (1) it was hearsay, because he was testifying about the conclusions of a laboratory technician who did not testify and whose report was not before the court members; and (2) he was not qualified to give expert testimony interpreting the laboratory report. Thus, as the lead opinion recognizes, the foundational requirements for proof of prior use of methamphetamine were not met. ___ MJ at (9).

To the extent that this Court has recognized the "doctrine of chances," we have insisted that it be used only when there is a factual predicate demonstrating that the subsequent ingestion was under circumstances sufficiently similar to the first ingestion to justify an inference that the first ingestion was knowing. See United States v. Matthews, 53 MJ 465, 470 (2000). In other words, the similarity does not flow from the results of the urinalysis, but from the circumstances surrounding the ingestion.

In the present case, there was not a sufficient factual predicate for the doctrine of chances, because there was no competent proof of the first and most significant point of similarity under the doctrine of chances, i.e., proof of prior use of methamphetamine.

Furthermore, to the extent that this Court applies the doctrine of chances, we must require that the court members be properly instructed on its application. The lead opinion recognizes that the only justification for admitting evidence of the 1994 positive urinalysis was to make sense of the doctrine of chances. ___ MJ at (10). However, the military judge's instructions were blatantly inadequate to guide the members in their application of the doctrine of chances. The instructions contain absolutely no mention of the doctrine of chances. The instructions merely gave the members a laundry list of permissible uses under Mil.R.Evid. 404(b): to prove knowledge, to prove intent, or to rebut appellant's claim of innocent ingestion. See United States v. Levitt, 35 MJ 114, 119-20 (CMA 1992) ("Merely reciting the purposes allowed by Mil.R.Evid. 404(b) without identifying the precise purpose for which the evidence may be used in a particular case will not suffice."); United States v. Harrison, 942 F.2d 751, 759 (10th Cir. 1991) ("court must identify a specific reason for admitting the evidence, rather than merely reciting the language of Rule 404(b)."); United States v. Cortijo-Diaz, 875 F.2d 13, 15-16 (1st Cir. 1989) (expressing dissatisfaction with "laundry-list" instruction); United States v. Rivera, 837 F.2d 906, 912-13 (10th

Cir. 1988) ("laundry list" of purposes allowed under Rule 404(b) not sufficient).

The instructions gave no guidance for determining how a prior urinalysis and appellant's explanation had any bearing on the charges. They gave no guidance regarding the high degree of similarity between the two incidents that is required to invoke the doctrine of chances in rebuttal to a claim of innocent ingestion. See United States v. Martinez, 40 MJ 426, 431 (CMA 1994) (military judge must tailor instructions to facts of case); Cortijo-Diaz, supra at 16 ("'instruction must have left the jury wondering how the [evidence] could have a bearing on' the various items of Rule 404(b)"). In spite of the boilerplate admonition against concluding that appellant "is a bad person or has criminal tendencies," the instructions did not preclude the members from concluding that appellant knew he was ingesting methamphetamines on the date charged because he had ingested them in 1994. In my view, the military judge's instructions left the members totally unguided in their consideration of this highly prejudicial evidence.

Finally, I disagree with the view expressed in the lead opinion that the military judge's limiting instructions regarding the 1994 incident guarded against the member's misuse of this evidence. ___ MJ at (19). In my view, the instructions compounded the error by erroneously informing the members that there was competent "[e]vidence that on 14 January of 1994, the accused submitted a urine sample that subsequently tested

3

positive for methamphetamine," when in fact that was no such evidence.

I would reverse the decision below and set aside the findings and sentence.