*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, KIRKBY, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**James H. BASS**
Gunnery Sergeant (E-7), U.S. Marine Corps
*Appellant*

**No. 202300185**

_____

Decided: 25 February 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Ryan Lipton (arraignment)
Adam J. Workman (motions and trial)

Sentence in the Entry of Judgment: a reprimand and reduction to E-5.

For Appellant:
*Lieutenant Commander Doug Ottenwess, JAGC, USN*

For Appellee:
*Lieutenant Michael A. Tuosto, JAGC, USN*

Judge de GROOT delivered the opinion of the Court, in which Senior Judge KISOR and Senior Judge KIRKBY joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

de GROOT, Judge:

Appellant was convicted, contrary to his pleas, of two specifications of violation of a lawful general order, Article 92, Uniform Code of Military Justice [UCMJ], by wrongfully using tetrahydrocannabinol [THC]-8.[1]

Appellant raises three assignments of error, which we rephrase as follows: (1) whether the military judge abused his discretion by admitting the results of a prior urinalysis for which Appellant was previously acquitted and his previous testimony pursuant to Military Rule of Evidence [Mil. R. Evid.] 404(b); (2) whether Appellant's convictions are factually sufficient; and (3) whether referral of Appellant's case to a judge-alone special court martial pursuant to Article 16(c)(2)(A) violated his Fifth Amendment right to due process.[2] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant provided urine samples on 16 September, 9 November, and 15 November of 2021, all of which tested positive for THC-8.[3] Appellant was charged with wrongfully using THC-8 in violation of Article 92. At a special court-martial in October 2022, Appellant argued he innocently ingested THC-8 and testified that "you only remember things in your life that mean something," and "I remember those days because they were monumental days to me

---

[1] 10 U.S.C. § 892. Sec'y of the Navy, All Dep't Admin. Msg. 074/20, *Prohibition on the use of hemp products* updated, para. 5 (Jul. 24, 2020) [ALNAV 074/20].

[2] Appellant's third assignment of error does not warrant discussion or relief. *See United States v. Wheeler*, 85 M.J. 70, 2024 CAAF LEXIS 479, at *16-17 (C.A.A.F. Aug. 22, 2024).

[3] App. Ex. XIX.

because my career was almost going to get flushed down the drain."[4] Appellant was acquitted.[5]

Shortly after the conclusion of that special court-martial, Appellant provided two urine samples on 29 October and 13 December 2022. The Defense did not challenge that those samples were properly obtained, handled, and tested by the laboratory. Each sample tested positive for THC-8 above the Department of Defense cutoff level. Appellant was charged with two specifications of Article 92, UMCJ, for violating paragraph 5 of ALNAV 074/20, which prohibits Sailors and Marines "from using any product made or derived from hemp."[6] The specifications were referred to a judge alone special court-martial. The issues arising from this second court-martial form the basis of this appeal.

The Government provided notice of its intent to use the evidence of the previous positive urinalyses and excerpts of Appellant's testimony in its case in chief pursuant to Mil. R. Evid. 404(b). During an Article 39(a) hearing, the military judge ruled that the Government failed to provide proper notice, but allowed the Government to re-notify trial defense counsel. Although he ruled against the Government, he told the parties that he may reconsider his ruling if there is a re-notification by the Government and if Appellant "raises a defense of innocent ingestion or mistake or accident."[7] The Government did re-notify trial defense counsel of its intent to use the evidence to prove Appellant's knowledge, absence of mistake, and lack of accident.[8]

At trial, the Government called the senior chemist, Dr. Gordon-Reese from the Navy Drug Screening Lab in Jacksonville, Florida, as an expert witness. [9] She testified about the procedures of the laboratory, the handling and testing of Appellant's samples, and THC-8 and drug testing in general. She also testified that THC-8 could be derived from hemp or the marijuana plant, or made

---

[4] *See* Pros. Ex. 22; *see also* App. Ex. XXI at 3.

[5] R. at 31, 281.

[6] *See* ALNAV 074/20. *See also* 7 U.S.C. § 1639o. ("Hemp" is defined as "the plant Cannabis sativa L and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.").

[7] R. at 45.

[8] *See* App. Ex. XIX.

[9] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

synthetically. Dr. Gordon-Reese went on to state that THC-8 is not naturally produced in the body. She opined that if the THC-8 was derived from marijuana, then she would expect to see an additional positive urinalysis for THC-9 because the concentration of THC-8 is 50 to 75 percent less than THC-9.[10] She testified that Appellant's samples did not contain THC-9. Additionally, she stated that the process to produce THC-8 synthetically is costly given the time and resources necessary.[11] She also described how products containing THC-8 were generally commercially available.

On cross-examination, Dr. Gordon-Reese testified that the laboratory tests could not prove Appellant's intent.[12] Said another way, the tests could not rule out unknowing ingestion. She was also aware that products containing THC-8 had been mislabeled, stating the product listing only "hemp containing compounds," when there were "quantities of THC-9 and THC-8" in them.[13] However she had not seen any products that failed to include a label altogether.[14]

In his defense, Appellant called three witnesses to testify to his good military character. After trial defense counsel rested its case, the Government sought to introduce the results of Appellant's prior urinalyses on 16 September 2021 and 15 November 2021 to rebut trial defense counsel's cross-examination of Dr. Gordon-Reese relating to knowledge and lack of mistake. Over Appellant's objection, the military judge allowed the Government to present the evidence in rebuttal.[15] The Government subsequently called the substance abuse control officer [SACO] during the September – November 2021 time frame to lay the foundation and chain of custody for the testing of Appellant's urine samples that were obtained during that time. They then recalled Dr. Gordon-Reese to explain the positive results of Appellant's 2021 urine samples. Finally, the Government introduced select portions of Appellant's testimony from his first court-martial as a self-authenticating business record in accordance with Mil. R. Evid. 803(6) and 902(11).[16]

---

[10] R. at 222–23.

[11] R. at 295.

[12] R. at 233–34.

[13] R. at 239.

[14] R. at 238.

[15] R. at 280.

[16] R. at 284.

In surrebuttal, Appellant called his own expert in chemistry and urinalysis certification to testify.[17] Appellant's expert disagreed with Dr. Gordon-Reese and testified about synthesizing THC-9 from THC-8, which would mean that a person's urine "might" test positive for THC-8 without THC-9 being present despite the source of THC-8 being marijuana rather than hemp.[18]

Appellant was found guilty of both specifications. In his special findings, the military judge wrote that while "it may be possible to isolate THC-8 from marijuana, it would be costly and difficult. The same is true regarding THC-8 derived synthetically."[19] The military judge found "the possibility that the THC-8 in [Appellant's] samples came from something other than hemp, is speculative and fanciful."[20]

Additional facts necessary to resolve Appellant's AOE are discussed below.

## II. DISCUSSION

### A. The Military Judge did not abuse his discretion in admitting evidence pursuant to Mil. R. Evid. 404(b).

#### 1. Law

We review the military judge's decision to admit evidence pursuant to Mil. R. Evid. 404(b) for an abuse of discretion.[21] Military judges abuse their discretion (1) if the findings of fact upon which they predicate their ruling are not supported by the evidence of record; (2) if they use incorrect legal principles; or (3) if their application of the correct legal principles to the facts is clearly unreasonable.[22] "[T]he abuse of discretion standard of review recognizes that a judge has a wide range of choices and will not be reversed so long as the decision remains within that range."[23]

Evidence of a crime, wrong, or other act may not be used to show character or propensity, but it "may be admissible for another purpose, such as proving

---

[17] R. at 315.

[18] R. at 333–35.

[19] App. Ex. XXI at 2.

[20] App. Ex. XXI at 2.

[21] *United States v. Wilson*, 84 M.J. 383, 390–91 (C.A.A.F. 2024) (citation omitted).

[22] *Id.*

[23] *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010).

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[24]

To determine whether evidence of uncharged acts of misconduct is admissible under Mil. R. Evid. 404(b), we look to "whether that evidence is offered for some purpose other than to demonstrate the accused's predisposition to crime. . . ."[25] This requires the evidence at issue to satisfy the three factors set forth in *United States v. Reynolds*: (1) whether the evidence reasonably supports a finding that appellant committed prior crimes, wrongs, or acts; (2) whether a fact of consequence is made more or less probable by the existence of this evidence, and (3) whether the probative value is substantially outweighed by the danger of unfair prejudice.[26]

The Court of Appeals of the Armed Forces [CAAF] clarified the *Reynolds* factors in cases involving prior drug use. In *United States v. Graham*, the CAAF held that the military judge abused his discretion in admitting evidence of a previous positive urinalysis.[27] The military judge allowed the Government to ask one question regarding a positive urinalysis result for marijuana four years prior in order to rebut his "surprise" when he was notified of the positive urinalysis result for marijuana.[28] The CAAF noted the foundation was insufficient to introduce the prior positive urinalysis.[29] Further, the prior positive urinalysis was not "logically relevant."[30] It did not logically rebut the appellant's surprise that he tested positive twice due to innocent ingestion with four years in between the results, nor the likelihood that the appellant would test positive twice due to innocent ingestion. In addition, the military judge specifically instructed the members they were not to consider it for whether or not the appellant knowingly used marijuana that was the basis for the charged offense.[31]

Subsequently the CAAF decided *United States v. Tyndale,* wherein it held that the military judge properly admitted evidence of a prior positive urinalysis

---

[24] *United States Hyppolite*, 79 M.J. 161, 165 (C.A.A.F. 2019)

[25] *United States v. Thompson*, 63 M.J. 228 (C.A.A.F. 2006).

[26] 29 M.J. 105, 109 (C.M.A. 1989).

[27] 50 M.J. 56, 57 (C.A.A.F. 1999).

[28] *Id.* at 58.

[29] *Id.* at 60.

[30] *Id.* at 58.

[31] *Id.* at 58–60.

in a subsequent prosecution for wrongful use of a controlled substance.[32] In a plurality opinion, the CAAF found the military judge properly admitted the evidence using the *Reynolds* factors. The Government counsel appropriately laid the foundation for both the appellant's previous positive urinalysis result and his testimony at his first court-martial to show that there was prior use.[33] Applying the doctrine of chances, the Government counsel met the second prong of *Reynolds* to show the evidence was logically relevant to rebut the appellant's theory that he unknowingly ingested a controlled substance.[34] As to the final *Reynolds* factor, the military judge properly weighed the evidence and properly instructed the panel.[35] The CAAF distinguished this case from *Graham*.[36] While there was no fact of consequence that a prior positive urinalysis result could rebut in *Graham*, in *Tyndale*, the appellant's testimony did provide facts that could be rebutted.[37]

In *United States v. Thompson*, the CAAF found the military judge did abuse his discretion when he admitted the appellant's admissions of preservice drug use for the "express purpose[ ] . . . to show knowledge of marijuana use and the absence of mistake."[38] The CAAF found that while the military judge's analysis was successful in meeting the first prong of the *Reynolds* test, the second prong was not met. The appellant did not use mistake or lack of knowledge as a defense, but rather argued the credibility of the witnesses and the pressure he

---

[32] 56 M.J. 209, 216 (C.A.A.F. 2001).

[33] *Id.* at 213. The dissent in *Tyndale* argued that there was insufficient foundation of the prior urinalysis because the only evidence introduced was the testimony from the trial counsel from the first court-martial. *Id.* at 219–220 (Gierke, J. dissenting). According to the dissent, the trial counsel's testimony constituted hearsay and he lacked the expert experience to testify regarding the urinalysis results. *Id.*

[34] *Id.* at 213–14.

[35] *Id.* at 214–15. The dissent also would have held that there was insufficient similarity between the two positive urinalyses to justify an inference that the first ingestion was knowing. *Id.* at 220. Additionally, the dissent believed that the members were not properly instructed on the doctrine of chances. *Id.*

[36] *Id.* at 216.

[37] *Id.* at 216. In a separate concurring opinion, Chief Judge Crawford stated that she "would conclude that the evidence is probative of the material issue in this case." *Id* at 217–19 (Crawford, C.J., concurring). Similarly, Judge Sullivan wrote that the members were "entitled to know that the appellant was in reality asserting that 'he was struck by lightning twice.'" *Id.* at 219 (Sullivan, J., concurring).

[38] 63 M.J. 228, 230 (C.A.A.F. 2006).

felt to hide his status as a confidential informant.[39] Therefore, the preservice drug use did not make a fact of consequence more or less probable.[40]

### 2. Analysis

Under an abuse of discretion standard, "[w]e will not overturn a military judge's evidentiary decision unless that decision was 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'"[41] Applying the *Reynolds* factors, we hold that the military judge did not abuse his discretion when he found the Government counsel established proper foundation for the consideration of the evidence at issue, the evidence was relevant to show Appellant's lack of mistake, and the probative value was not substantially outweighed by unfair prejudice.

#### a. There was reasonable support for the evidence in question.

The standard to establish the first *Reynolds* prong "is low."[42] Here, the Government satisfied its burden. The Government avoided the foundation issues of *Tyndale* and *Graham* in three ways: (1) by calling the SACO from the prior urinalyses to lay the foundation for the 2021 samples; (2) by having their expert witness testify to the urinalyses' results; and (3) by introducing Appellant's prior testimony as a business record. There was sufficient, reliable evidence to determine that Appellant committed the prior act.

#### b. The evidence in question had probative value to a fact at issue.

"The second prong mirrors the relevance concerns reflected under [Mil. R. Evid. 401 and Mil. R. Evid. 402], while the third prong reflects the concerns ordinarily handled under [Mil. R. Evid. 403]."[43]

The Government introduced evidence that Appellant tested positive for THC-8 on 16 September 2021 and 15 November 2021. At his first court-martial in October of 2022, Appellant testified that the experience had "monumental" effect on him because his "career was almost going to get flushed down the drain." The Government's theory of relevance was that this "monumental" ex-

---

[39] *Id.* at 231.

[40] *Id.*

[41] *United States v. McDonald*, 59 M.J. 426, 430 (C.A.A.F. 2004) (citing *United State v Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)).

[42] *Thompson,* 63 M.J. at 230.

[43] *United States v. Yammine*, 69 M.J. 70, 77 (C.A.A.F. 2010).

perience put Appellant on notice of conduct that may have resulted in a positive urinalysis. Thus, according to the Government, the evidence made it less likely that Appellant unknowingly used THC-8 on or about 19 October 2022 and again on or about 13 December 2022.

As to this factor, the military judge found that the prior urinalyses and Appellant's testimony at his previous court-martial were relevant to rebut Appellant's theory of "unknowing or mistaken ingestion" as elicited in cross examination of Dr. Gordon-Reese. The military judge held that the evidence made "the possibility of mistake less probable" because "[t]esting positive on two prior occasions and going through the court-martial process [ ] makes it less probable that any ingestion was mistaken."[44]

Importantly, the military judge's reasoning and analysis did not run afoul of *Graham*, *Tyndale*, or *Thompson*. The evidence in *Graham* was from four years prior and offered for a different purpose: to rebut Graham's surprise at a subsequent positive urinalysis.[45] Importantly, the military judge in *Graham* found that the evidence was not relevant to prove that Graham knowingly used marijuana four years later.[46] Here, there is a stronger temporal connection and the evidence was offered to rebut a fact of consequence – the probability of mistaken ingestion. As in *Tyndale*, the Government here provided additional support to Appellant's prior positive urinalysis, namely his previous testimony to demonstrate the improbability of unknowing ingestion. And, unlike in *Thompson*, knowledge and mistake were at issue in Appellant's court-martial.

Military Rule of Evidence 404(b) is a rule of inclusion. A review of federal decisions that analyze Federal Rule of Evidence [Fed. R. Evid.] 404(b) in analogous cases show that *every* federal circuit court of appeals permits the introduction of evidence relating to prior drug activity to prove knowledge, intent, or lack of mistake.[47] Interpreting an identical rule of evidence, our federal

---

[44] R. at 281.

[45] *Graham*, 50 M.J. at 57.

[46] *Id.* at 59.

[47] *United States v. Abreu*, 2023 U.S. App. LEXIS 31630, *1 (2d. Cir. 2023) (district court did not abuse its discretion by admitting evidence of previous drug trafficking over ten-years prior); *United States v. Alvarez*, 2023 U.S. App. LEXIS 30807 (9th Cir. 2023) (district court did not abuse its discretion by admitting twenty-year-old drug trafficking conviction at subsequent trial); *United States v. Garner*, 961 F.3d 264, 273 (3d Cir. 2020) *cert denied* 141 S. Ct. 932 (2020) (district court properly admitted evidence of prior drug involvement because it demonstrated Garner's personal knowledge of drug trafficking); *United States v. Avalos*, 458 Fed. Appx. 530, 533 (6th Cir. 2012)

counterparts have allowed: evidence that is over a decade old;[48] evidence relating to the possession of a completely different controlled substance;[49] evidence from a previous acquittal;[50] and evidence that an accused possessed or sold a controlled substance from a different location.[51] Additionally, federal courts have consistently allowed this evidence to be introduced on the merits rather than in rebuttal.[52]

---

("Where a defendant is charged with a specific intent offense . . . evidence of her prior convictions or bad acts may be admissible under Rule 404(b) for the purpose of proving such intent."); *United States v. Enriquez*, 457 Fed. Appx. 795, 803 (10th Cir. 2012) (district court did not abuse discretion by admitting evidence of prior drug involvement, as "[r]elevant purposes include raising an inference that the defendant had knowledge of the existence of contraband in a vehicle."); *United States v. Samuels*, 611 F.3d 914, 918 (8th Cir. 2010) *cert denied* 562 U.S. 1262 (2011) (district court did not err in admitting Samuels' eight-year-old conviction because it was relevant to prove "intent and knowledge."); *United States v. Smith*, 228 Fed. Appx. 383, 388 (5th Cir. 2007) *cert denied* 552 U.S. 885 (2007) (district court did not abuse its discretion admitting five-year-old conviction for drug distribution); *United States v. Puckett*, 405 F.3d 589, 596 (7th Cir. 2005) ("It is well settled in this circuit, that when a defendant is charged with a specific intent crime . . . evidence of past action is probative if used to establish an essential element of the crime charged."); *United States v. Brewer*, 2005 U.S. App. LEXIS 20709, *6 (11th Cir. 2005) (holding prior conviction of a drug-related offense was relevant to prove Brewer's intent, which he made a material issue by pleading not guilty); *United States v. Scalco*, 1992 U.S. App. LEXIS 9559 (4th Cir. 1992) ("Scalco's prior drug involvement tended to show intent and lack of mistake."); *United States v. Rubio-Estrada*, 857 F.2d 845, 847 (1st Cir. 1988) (Judge Breyer, writing for the court, held that evidence of a prior conviction "is admissible to show 'knowledge' and 'intent' both controverted issues in the case *that are not based on 'bad character'.*"); *United States v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982 (testimony regarding defendant's prior drug dealing in his basement was properly admitted to prove motive, intent, preparation, plan, knowledge, identity, and absence of mistake in a subsequent trial for conspiracy).

[48] *Alvarez*, 2023 U.S. App. LEXIS 30807 at *3. *See also Puckett*, 405 F.3d at 597 (citations omitted).

[49] *Smith*, 228 Fed. Appx at 387–88.

[50] *United States v. Vega*, 676 F.3d 708, 718 (8th Cir. 2012) *cert denied* 568 U.S. 878 (2012).

[51] *Garner*, 961 F.3d at 273.

[52] *See* n. 47.

Our superior court routinely references Fed. R. Crim. 404(b) and looks to the federal courts' application the rule.[53] Accordingly, we do the same and find their analysis persuasive.

### c. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

As to the final *Reynolds* factor, military judges enjoy wide discretion when they conduct the requisite balancing on the record.[54]

Mindful of the potential prejudicial effect, the military judge denied the Government's motion for a preliminary ruling on admissibility but allowed them to re-notify and re-raise the issue prior to trial. The Government raised the issue at multiple points throughout the trial, but the military judge reserved ruling to hear the presentation of the evidence. After the Defense rested its case, the military judge ruled and allowed the Government to present the evidence in rebuttal.[55] The military judge made the following findings of fact and conclusions of law:

> [T]he defense theory of an unknowing or mistaken ingestion, which was brought out on the cross-examination of the government's witness, does raise the probative value of the evidence; however because the accused was acquitted, the probative value of that evidence is greatly diminished in accordance with *U.S. v. Hoffman* [ ]. The Court does not find, however, that the danger of unfair prejudice is substantially outweighed by the probative value, albeit a diminished probative value. Therefore, I will allow the government to proceed with the two prior urinalyses and only the portion of the testimony that you gave specific notice of.[56]

The danger of unfair prejudice was lessened given that the military judge was the factfinder and is presumed to know and follow the law.[57]

---

[53] *Graham*, 50 M.J. at 60; *Tyndale*, 56 M.J. at 219.

[54] *United States v. Chamorro*, 2019 CCA LEXIS 107, *5 (N-M. Ct. Crim. App. March 11, 2019) (citing *United States v. Harris*, 46 M.J. 221, 225 (C.A.A.F. 1997)).

[55] R. at 265.

[56] R. at 281-82 (citing *United States v. Hoffman* 2018 CCA LEXIS 326 (N-M. Ct. Crim. App. 2018), *rev. denied*, 80 M.J. 462 (C.A.A.F. 2020)).

[57] *United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011) (citing *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000)). We also note from the evidence presented

We reject Appellant's argument that this evidence created a trial within a trial or shifted the burden of proof to Appellant in any way.[58] This misapprehends the limited purpose of the evidence. We note that the proper introduction of evidence of an accused's guilt cannot be characterized as burden shifting.

The military judge used the correct legal principles, his findings of fact are supported by the evidence in the record, and he applied the correct legal principles in a reasonable manner. While a different judge may have reached a different conclusion, we find the decision here was not outside the range of choices available to the military judge. Accordingly, we find that the military judge did not abuse his discretion in admitting the results of Appellant's urinalyses from 16 September and 15 November 2021 and select portions of Appellant's testimony at his previous court-martial.

## B. Appellant's convictions are factually sufficient.

In order to trigger our duty to review a specification for factual sufficiency, an appellant must first make a request and show a specific deficiency in proof.[59]

We find that Appellant has made an adequate showing to trigger our factual sufficiency review. However, after first weighing of the evidence, giving appropriate deference to the types of evidence admitted as required and interpreted by our superior court in *United States v. Harvey* – and deciding it has met the "beyond a reasonable doubt" standard,  we are not "clearly convinced that the finding of guilty was against the weight of the evidence."[60]

---

at trial that THC-8 is not a controlled substance and is commercially available in a variety of products. It follows that there would be less stigma associated with its use, which further separates this case from *Graham*, *Tyndale*, and *Thompson*. The commercial availability and decreased stigma lessen the potential prejudicial effect of this type of evidence.

[58] Appellant's Br. at 12.

[59] 10 U.S.C. § 866(d)(1)(B).

[60] __ M.J. __, 2024 CAAF 502, at *12–13 (C.A.A.F. September 6, 2024).

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[61]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[61] Articles 59 & 66, UCMJ.